Thomas Edwin **WALKER**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 04–03–00915–CR.

Court of Appeals of Texas, San Antonio.

Feb. 22, 2006.

252

Rebecca L. Gibson, S. Todd Gibson, Gibson & Gibson, Seguin, for appellant.

Heather Hollub, Hollub & Simmons, Seguin, for appellee.

Sitting: ALMA L. LÓPEZ, Chief Justice, SARAH B. DUNCAN, Justice, PHYLIS J. SPEEDLIN, Justice.

## OPINION

Opinion by SARAH B. DUNCAN, Justice.

Thomas Edwin Walker appeals the trial court's judgment convicting him of resisting arrest and sentencing him to 180 days in jail and a $2000 fine, both probated for two years. We hold Walker was prejudiced by the deficient performance of his trial counsel, Robert E. Houssiere, and therefore reverse the trial court's judgment and remand the cause for a new trial.

### Factual and Procedural Background

Walker was charged with intentionally obstructing Guadalupe County Precinct 3 Constable Travis Payne's effort to arrest him. At trial, the State and Walker offered differing versions of what occurred.

Payne testified that on Saturday evening May 10, 2003, he was home doing yard work when he heard a truck spinning its tires as it came out of the driveway of his neighbor, Thomas Edwin Walker. After going inside his house, showering, shaving, and putting on his uniform, Payne drove across the street to Walker's house in his marked vehicle to investigate. When Payne pulled into Walker's driveway at around 9:00 p.m., he saw two men drinking beer while sitting in a car with the motor running. After speaking to them briefly, Payne asked them for their identification. According to Payne, Walker then came out of the door of his trailer and "went berserk," "cussing and hollering." Payne testified Walker told him to leave the property. Walker then refused Payne's request for identification and went back inside the house, contrary to Payne's command that Walker stay outside. Payne then called the sheriff's office for backup.

When Deputy T.J. Scott of the Guadalupe County Sheriff's Department arrived about ten minutes later, two other people had joined Walker out on the driveway. Payne testified that, while he took Scott to the road to show him the skidmarks and explain the situation, Walker "cussed Scott [and Payne, and] holler[ed] and screamed the whole time." Scott testified he heard Walker tell the two people standing with him that he was "fixing to ... whip [Payne's] ass." Scott also testified that, when he walked over to Walker and conducted a pat-down, Walker resisted verbally. Scott testified that, after he finished the pat-down, Payne started to handcuff Walker; but Walker "jerked his arm away in an aggressive manner." Payne, on the other hand, testified that it was Scott who tried to put handcuffs on Walker; and Walker resisted by "pulling and jerking and trying to move around." Payne testified that, after arresting Walker, Payne

"wound up with scrape[s] on the cheek and on [his] arm" and a broken pair of glasses.

According to Walker, he walked over to Payne when he first arrived and asked what he wanted; Payne said that someone had just pulled out of Walker's driveway with no muffler. Walker disagreed and told Payne to leave the property. At that point, Walker testified, Payne started threatening to arrest him. Because Payne would not leave, Walker turned around and went inside the house to call 911.[1] When the sheriff's dispatcher told him an officer was en route, Walker went out and sat on his porch to wait. When Scott arrived, Walker started walking toward the officers; but they yelled at him to get back. Walker testified he called out to Scott that he wanted to file trespassing charges against Payne. Scott then accused Walker of saying he "was going to whip his ass," which Walker testified he told Scott he had not said. Scott then came over to Walker and asked what the problem was. As Walker was explaining that Payne was harassing him and trespassing, Payne came up behind him and started putting handcuffs on him. Walker denied the officers ever tried to pat him down. Walker denied resisting and denied threatening anyone. He testified that, when Payne started handcuffing him, he "scrinched a little" and turned his head around. Then Payne pushed Walker over the hood of the car, finished handcuffing him, and took him to the squad car.

Walker's son James testified that he was home when Walker was arrested and was able to see and hear what occurred. According to James, although both Payne and Walker were speaking loudly, Walker did not make any threats. James testified that his father was talking with Scott when Payne "walked up behind him, grabbed a hold of his right arm, and [Walker] looked back. And when he looked back, he leaned to the front of the car and put the other hand behind his back." According to James, Walker did not resist in any way.

Also testifying on Walker's behalf was Gerald Gilley, who rents space on Walker's property. Gilley was standing next to Walker when he was arrested. Gilley testified that, when the officer grabbed Walker's wrist and started handcuffing him, Walker bumped into Gilley's shoulder; Gilley put up a hand to steady him. One of the officers then threatened to arrest Gilley, too, if he did not move away. The officer then pushed Walker down over the vehicle and handcuffed the other hand. Gilley testified that Walker did not physically resist at all.

The jury found Walker guilty, assessed punishment at six months in jail and a $2,000 fine, recommending that both the jail time and the fine be probated for two years. The court followed the jury's recommendation. After the court signed its judgment, Walker's new attorney filed a motion for a new trial, contending Walker had received ineffective assistance of counsel. After a hearing, the trial court denied the motion. Walker appealed.

### APPLICABLE LAW

To establish ineffective assistance of counsel, a defendant must show by a preponderance of the evidence that he was prejudiced by his counsel's deficient performance. *Ex parte Nailor*, 149 S.W.3d 125, 130 (Tex.Crim.App.2004) (citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674

---

1. Walker's testimony was corroborated by the sheriff's office's 911 dispatcher, who testified that Walker called that evening and said he needed a deputy sent to his home because Payne was there harassing him, threatening him, and refusing to leave the property.

(1984)). Counsel's performance is deficient when his "representation f[alls] below the objective standard of professional norms." *Bone v. State,* 77 S.W.3d 828, 833 (Tex.Crim.App.2002). However, our "review of defense counsel's representation is highly deferential and presumes that counsel's actions fell within the wide range of reasonable and professional assistance." *Id.*

To show prejudice, "appellant must show a reasonable probability that, but for his counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Mitchell v. State,* 68 S.W.3d 640, 642 (Tex.Crim.App.2002). "In other words, the appellant must prove counsel's representation so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Hall v. State,* 161 S.W.3d 142, 152 (Tex.App.-Texarkana 2005, pet. ref'd) (citing *Strickland,* 466 U.S. at 686, 104 S.Ct. 2052).

We analyze ineffective assistance of counsel claims using a "totality of the representation" standard. *Ex parte Nailor,* 149 S.W.3d at 130. Under this standard, we "must first analyze all allegations of deficient performance, decide whether counsel's conduct was constitutionally deficient, and, if so, then consider whether those specific deficient acts or omissions, in their totality, prejudiced the defense." *Id.*

## DISCUSSION

### *Investigation of Facts*

■ Walker first argues that Houssiere failed to adequately investigate the facts: he never interviewed Payne, Scott, or the two men in the car in front of Walker's house who witnessed the arrest; rather than conducting an independent investiga-tion, he relied solely on the reports in the State's file and his conversations with Walker; he relied on Walker to determine who should be subpoenaed; and he failed to interview the subpoenaed witnesses before trial.

■ It is well settled that trial counsel has a duty to make an independent investigation into the facts of the case. *McFarland v. State,* 928 S.W.2d 482, 501 (Tex. Crim.App.1996), *cert. denied,* 519 U.S. 1119, 117 S.Ct. 966, 136 L.Ed.2d 851 (1997) (citing *Strickland,* 466 U.S. at 691, 104 S.Ct. 2052). However, "the duty to investigate ... is not categorical. Rather, 'counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary.'" *Id.* (quoting *Strickland,* 466 U.S. at 691, 104 S.Ct. 2052).

At the hearing on Walker's motion for a new trial, Houssiere admitted he never interviewed the men in the car. Alluding to the fact that both men were arrested at the scene for drug offenses, Houssiere stated that "in [his] opinion, [they] were not witnesses to which the jury ... would give so much weight;" therefore, he did not believe it was in Walker's best interest for them to testify on his behalf. We hold Houssiere's decision not to rely on these two readily impeachable witnesses was not unreasonable in light of the availability of two other eyewitnesses.

■ Houssiere admitted his investigation of the facts consisted almost exclusively of reading the report in the State's file and his conversations with Walker. He did not contact Payne or Scott to discuss the case before trial; he relied solely on Walker to determine who should be subpoenaed and to complete the subpoena requests; and it appears the only subpoenaed witness Houssiere interviewed before trial was Gilley. We agree with Walker

that defense counsel should not "rely on the veracity either of his client's version of the facts or witness statements in the State's file." *McFarland*, 928 S.W.2d at 501. We also agree that counsel's failure to prepare was apparent at times during the trial. However, Walker did not establish that Payne or Scott would have discussed the case with Houssiere before trial or that, had he done so, the interviews would have revealed beneficial information.

Walker also testified that Houssiere failed to interview or subpoena a neighbor who would have testified that Payne's glasses were broken before Payne went to Walker's house. However, Houssiere was not given an opportunity to explain this conduct; therefore, we cannot hold his performance to have been deficient in this regard. *See Rylander v. State*, 101 S.W.3d 107, 111 (Tex.Crim.App.2003). Nor did Walker establish that a thorough independent investigation of the facts would have uncovered beneficial information or that witnesses with beneficial information were available to testify. Accordingly, we hold Walker has not met his burden to show that counsel was ineffective in failing to investigate the facts.

### *Voir Dire*

■ Walker next argues Houssiere's voir dire was deficient because he did not ask the members of the venire any questions and, in particular, failed to ask them about possible bias. We agree.

■ A criminal defendant has a constitutional right to trial by an impartial jury. U.S. CONST. amend. VI; TEX. CONST. art. 1, § 10. " 'Voir dire plays a critical function in assuring the criminal defendant that his [constitutional] right to an impartial jury will be honored.' " *Morgan v. Illinois*, 504 U.S. 719, 729, 112 S.Ct. 2222, 2230, 119 L.Ed.2d 492 (1992) (quoting *Rosales–Lopez v. U.S.*, 451 U.S. 182, 188, 101

S.Ct. 1629, 1634, 68 L.Ed.2d 22 (1981) (plurality opinion)). "[P]art of the guarantee of a defendant's right to an impartial jury is an adequate *voir dire* to identify unqualified jurors." *Morgan*, 504 U.S. at 729, 112 S.Ct. 2222. One purpose of voir dire is thus to "elicit information which would establish a basis for a challenge for cause because the venireman is … biased or prejudiced for or against one of the parties or some aspect of the relevant law." *Sanchez v. State*, 165 S.W.3d 707, 710–11 (Tex.Crim.App.2005). Bias against the law exists "when a venireperson's beliefs or opinions 'would prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and oath.' " *Sadler v. State*, 977 S.W.2d 140, 142 (Tex.Crim.App.1998) (quoting *Riley v. State*, 889 S.W.2d 290, 295 (Tex.Crim.App.1993)). A second purpose of voir dire is to facilitate the parties' intelligent use of peremptory challenges. *Sanchez*, 165 S.W.3d at 711. Thus "counsel must be diligent in eliciting pertinent information from prospective jurors during voir dire in an effort to uncover potential prejudice or bias … [and] counsel has an obligation to ask questions calculated to bring out information that might indicate a juror's inability to be impartial." *Brasher v. State*, 139 S.W.3d 369, 373 (Tex.App.-San Antonio 2004, pet. ref'd).

During the State's voir dire, six members of the venire identified themselves as working or having close relatives who worked in law enforcement. The State asked whether that background would affect them sitting as jurors in the case. Prospective juror Watson, whose son is a State trooper, responded that she "guess[ed] it depends on what the situation is." None of the others answered the question directly; instead, several of them recited incidents of law enforcement officers being seriously injured by suspects

resisting arrest. In particular, prospective juror Brogdon stated that his uncle, a sheriff's deputy in Kansas, was in the hospital for a number of months after being assaulted by a suspect resisting arrest. Brogdon is therefore "[r]eal sensitive to that." And prospective juror Mitchell, an Immigration and Customs Enforcement agent with the Department of Homeland Security, stated that he has encountered problems with suspects resisting arrest "[q]uite a few times." Indeed, one of Mitchell's fellow officers was killed by a suspect resisting arrest and a few of his other fellow officers have been hurt and hospitalized by resisting suspects. The State asked no further questions on the subject. Houssiere asked no voir dire questions at all. The prospective jurors were thus never asked if they could be fair and impartial in the case or whether they could make a decision based solely upon the evidence presented. And Houssiere did not even attempt to strike any of the prospective jurors for cause. Instead, he used two of his peremptory strikes on Brogdon and another law enforcement officer. Accordingly, Watson and Mitchell, as well as a woman who had worked for the Texas Department of Public Safety, all became jurors.

At the hearing on Walker's motion for new trial, Houssiere testified he did not question these prospective jurors about whether they would give more credibility to the law enforcement officers than to Walker and his witnesses in a case in which law enforcement officers were the alleged victims because the question "never occurred to [him]." Houssiere further testified he believes that to ask a law enforcement officer "a question like that is kind of like an implied insult" and exploring such potential bias was not "needed to protect [ ] Walker." "[B]ecause [he] was a law enforcement officer at one point," Houssiere generally assumes a law en-

forcement officer can be a "fair and honest and equitable juror;" and he "know[s] . . . for a fact" they will "comply with the standards that they promise to comply with."

During its voir dire, the State elicited information indicating potential prejudice or bias: Watson stated that, depending on the situation, her son's status as a State trooper might affect her ability to sit as a juror in a case of resisting arrest; Mitchell stated that one of his fellow officers had been killed and several others injured in altercations with resisting suspects; and Brogdon stated he is "real sensitive" to suspects who resist arrest. Therefore, to adequately represent Walker and protect his constitutional right to an impartial jury, Houssiere had a duty to further question the prospective jurors to discover if there was actual bias that could form the basis of a challenge for cause and to intelligently exercise Walker's peremptory challenges. And it is evident from Houssiere's testimony that "it never occurred" to him to explore the prospective jurors' potential biases that his deficiency in this regard was not the result of any trial strategy. In light of the information elicited by the State in its voir dire, we hold Houssiere's failure to ask any questions fell well below an objective standard of reasonableness.

### Element of Offense

■ Walker next argues Houssiere rendered ineffective assistance by eliciting "evidence from one defense witness proving that the offense occurred in the State of Texas" and thus "proving jurisdiction and alleviating the State's burden of proof at trial." We disagree.

The State presented evidence that Walker's house, where the offense occurred, is at 344 Sassman in Guadalupe County; Walker and Payne live across the street from each other; and Payne is the consta-

ble for Precinct 3 in Guadalupe County and as such is a certified peace officer for the State of Texas. This evidence is sufficient to meet the State's burden. *See Leyva v. State*, 552 S.W.2d 158, 162–63 (Tex.Crim.App.1977) (taking judicial notice that El Paso County is in Texas); *James v. State*, 89 S.W.3d 86, 89 (Tex.App.-Corpus Christi 2002, no pet.) (evidence the offense occurred in the City of Beaumont and Jefferson County was sufficient to circumstantially establish jurisdiction in Texas); *Garcia v. State*, 819 S.W.2d 634, 636 (Tex.App.-Corpus Christi 1991, no pet.) (taking judicial notice that Goliad County is in the State of Texas).

### *Jury Instruction*

■ Walker next contends Houssiere provided ineffective assistance by failing to object to the jury instruction that a "peace officer" is "a person elected, employed, or appointed as a peace officer ... [and] the Constable of Precinct 3, Guadalupe County, Texas is a peace officer." Walker argues that, because Payne's status as a peace officer was an element of the State's case, the instruction amounted to a comment on the evidence. However, even if we assume the instruction should not have been given, Walker has failed to show he was prejudiced. The undisputed evidence at trial established that Payne was a "peace officer": Payne, who was dressed in his uniform, testified he is and was at the time of the offense the Guadalupe County Precinct 3 Constable; he was first appointed to this position and then later successfully ran for re-election; and he is a "certified peace officer" in the State of Texas. Since this evidence was undisputed, no rational jury could have found that Payne was not a peace officer.

### *Knowledge of Law of Community Supervision*

■ Walker next argues Houssiere was deficient because he was completely un-aware of the law relating to community supervision. He did not even file an application for probation until he was prompted to do so by the trial judge, *see* TEX.CODE CRIM. PROC. ANN. art. 42.12, § 4(e) (Vernon Supp.2005); he was unaware that he was required to put on evidence establishing Walker's eligibility for probation, *see id.*, and in fact stated he was not going to offer any evidence in the punishment phase and had to be advised by the trial court that he had to prove up the application for community supervision. Finally, Houssiere failed to object to the charge asking that the jury set the length of the community supervision. *See id.* art. 42.12 § 4(a)-(b) (if jury recommends community supervision, judge shall suspend the imposition of sentence and set period of supervision). Although we recognize that these deficiencies clearly establish Houssiere's lack of familiarity with the law of probation, we hold Walker has not shown that this deficiency prejudiced him. His application for community supervision was eventually filed and its allegations established; and the record does not even suggest that the judge felt bound by the period of supervision recommended by the jury or would have imposed a lesser period had the recommendation not been made.

### *Extraneous Offenses and Bad Acts*

■ Walker next argues that Houssiere's deficient performance prejudiced him because the jury heard evidence of irrelevant and inadmissible extraneous matters during the guilt phase of the trial.

During its case-in-chief, the State elicited testimony from Scott that he found "narcotics violations" at Walker's property on the night of Walker's arrest and testimony from Payne that two men were arrested for drugs. (In fact, although the

record establishes that one of these men was charged with possession of marijuana, it does not reflect that the second man was charged with an offense.) Payne also testified that he once had to stop Walker from shooting fireworks because he was disturbing the peace of a dying woman and had heard automatic weapon fire coming from Walker's property. Finally, the State elicited testimony from Walker on cross-examination that he had previously been convicted of assault on a police officer. Walker contends the jury was permitted to hear this inadmissible extraneous offense evidence because Houssiere failed to take "steps to prepare himself [and Walker] for [Walker's] testimony at trial," failed to "investigate [ ] Walker's criminal history" or "[his] previous contacts with [Payne]," failed to "seek any discovery of the State's intent to use evidence pursuant to Rules 404 and 609 of the Rules of Evidence," chose "not to file any motions in limine concerning ... extraneous [offenses];" failed "to inform [ ] Walker what was necessary to avoid opening the door to the State's use of [his] prior record or other character evidence," failed to object when the State asked questions about extraneous offenses, and failed to request a limiting instruction in the jury charge. We must first determine whether the evidence was admissible.[2] *See Ortiz v. State,* 93 S.W.3d 79, 93 (Tex.Crim.App.2002), *cert. denied,* 538 U.S. 998, 123 S.Ct. 1901, 155 L.Ed.2d 824 (2003).

 The issue at trial was whether Walker resisted arrest. This fact was not made more or less probable by the testimony that one of the men in Walker's driveway was arrested for possession of marijuana. This evidence was therefore completely irrelevant. *See* Tex.R. Evid.

401; *England v. State,* 887 S.W.2d 902, 915 (Tex.Crim.App.1994). Nor was this evidence admissible as "same transaction contextual evidence," which is admissible "only ... when the offense would make little or no sense without also bringing in the same transaction evidence." *Id.* at 915. Here, same transaction contextual evidence was unnecessary since Payne and Scott both initially described the circumstances surrounding Walker's arrest without any reference to the drug arrest; and their testimony was clear and easily understood. Their subsequent testimony regarding the drug arrest was thus completely unnecessary for the jury to understand the factual basis of the resisting arrest charge. *See Peters v. State,* 93 S.W.3d 347, 353 (Tex.App.-Houston [14th Dist.2002], pet. ref'd). Since this evidence was not relevant to any issue in the case, we can only surmise that its only purpose was to show that Walker was a bad character who associated with drug users and therefore had a propensity to commit the charged offense. This is not a permissible purpose. Tex.R. Evid. 404(b) ("Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show action in conformity therewith."); *Castaldo v. State,* 78 S.W.3d 345, 348–51 (Tex.Crim.App.2002) (holding that Rule 404(b) applies not only to an accused but also to acts of third persons). Likewise, Payne's testimony about automatic weapon fire and Walker having disturbed the peace does not appear to have any relevance apart from supporting an inference of character conformity and was therefore inadmissible. *See* Tex.R. Evid. 404(b); *Montgomery v. State,* 810 S.W.2d 372, 390 (Tex.Crim.App.1990) (op. on reh'g).

**2.** The State does not argue that any of the complained-of evidence was admissible for

any purpose.

Walker's prior conviction for assault on a police officer was a twenty-year-old misdemeanor. Accordingly, this evidence was inadmissible for purposes of impeachment. Tex.R. Evid. 609(a)-(b). And there is no basis in the record for arguing that the conviction was admissible for some purpose other than character conformity. *See* Tex.R. Evid. 404(b).[3] Accordingly, this evidence was also inadmissible.

At the hearing on the motion for new trial, Houssiere testified that he spoke to Walker about his criminal history one time and learned that "something [had] happened ... a long time back." However, Houssiere did nothing to determine the nature or details of that offense; he did not investigate Walker's criminal history further; he did not interview Walker about his previous encounters with Payne, or learn what prior acts or character evidence might become admissible at trial. Nor did he prepare Walker to testify or discuss with him the types of testimony that would open the door to the State being able to bring in extraneous offense evidence. Houssiere testified he did not believe any of this was necessary to defend Walker because he "wasn't intending to open the door."

Houssiere also failed to discover the State's potential character evidence. Although the Guadalupe County Attorney's office does not make criminal history reports available to defense attorneys, Houssiere failed to file pretrial requests for notice of extraneous matters the State intended to introduce in its case-in-chief or for impeachment. *See* Tex.R. Evid. 404(b), 609(f). He testified he did not do so "and would not [do so] today" "because [he] think[s] it's a waste of time, and there's no foundation to file such a thing except just to—to have a delaying action." Nor did he file a motion in limine asking that the State's extraneous offense evidence be raised and considered outside the jury's presence. He did not take this routine step because "[he] didn't see the necessity to do that in defending [his] client."

Instead of conducting his own investigation, asking the State for disclosure, or seeking to require the State to raise extraneous offense evidence outside the jury's presence, Houssiere's strategy was to "handle that as a defense attorney if it came up in a manner that [he] should." However, when the State elicited testimony of extraneous offenses, Houssiere did nothing. He testified he did not object because he felt "[he] would do [his] client more good and less damage if [he] didn't try to, what appeared to be, hide something from the jury." But Houssiere admitted he would not have known what objection to make; he does not know the circumstances in which character evidence is admissible in the guilt phase of a criminal trial; and does not know that evidence of a conviction is generally inadmissible for impeachment purposes if it is more than ten years old.[4] *See* Tex.R. Evid. 609(b).

---

3. On direct examination, Walker stated that he knew "better than try to resist." During the State's cross-examination, the prosecutor asked, "And you state, also, that you know better than to resist. Have you ever had a prior assault with a police officer before?" Walker answered, "Yeah." Although the State's question suggests that Walker had somehow opened the door to evidence of the conviction, Walker was never asked and never testified about how it was that he "knew

better," and there is nothing in the record to suggest that the assault charge arose out of an attempt to arrest Walker or that Walker's knowledge not to resist was in any way related to the prior conviction.

4. Perhaps this is because counsel, who has been licensed to practice law in Texas since 1952, is primarily a tax, trusts, and estates lawyer; and although he routinely takes criminal appointments, he has never taken a con-

Houssiere also testified that he decided not to request a limiting instruction because he "was concerned about not doing anything that would offend the jury."

As Houssiere recognized in his closing argument, the outcome of this case rested upon the jury's decision whether to believe Payne's and Scott's version of the arrest or the version testified to by Walker and his witnesses. Walker's credibility was therefore critical to his defense. In this situation, investigation and discovery of matters relating to character cannot reasonably be considered "a waste of time." To effectively represent Walker, Houssiere should have conducted a reasonable investigation and filed discovery requests to learn about extraneous matters that might affect Walker's credibility; he should have taken reasonable steps—such as preparing Walker to testify and filing a motion in limine—to prevent such matters from coming before the jury; and, when these matters were raised before the jury, he should have objected and requested a limiting instruction to mitigate the harm to Walker. His strategy to "handle it" only if it came up at trial fell below an objective standard of adequate representation. Moreover, Houssiere failed even to follow his own flawed strategy. When inadmissible extraneous offense evidence did come up at trial, he still did nothing. We are thus left to conclude that his failure to discover and prevent the admission of inadmissible extraneous conduct evidence fell below the "objective standard of reasonableness under prevailing professional norms." *Strickland,* 466 U.S. at 690, 104 S.Ct. 2052; *see Ex parte Menchaca,* 854 S.W.2d 128, 131–32 (Tex.Crim.App.1993) (holding that counsel's failure to file motion in limine regarding prior conviction, failure to object, and failure to request a limiting instruction allowed jury to consid-

er inadmissible prior conviction and fell below objective standard of reasonableness); *Hall v. State,* 161 S.W.3d 142, 153–54 (Tex.App.-Texarkana 2005, pet. ref'd) (holding counsel was ineffective in failing to object to admission of extraneous matters).

### *Punishment Phase*

■ Finally, Walker argues he was prejudiced by Houssiere's deficient performance in the punishment phase of the trial because he invited the jury to hear evidence of unadjudicated arrests and failed to object to the absence of a reasonable-doubt instruction in the charge.

Before the punishment phase began, the State advised the court that it would not be calling any witnesses and would simply argue the matter to the jury. Accordingly, the State rested without presenting any evidence. Houssiere then called Walker to the stand, established that Walker had never been convicted of a felony, thus making him eligible for probation, and asked several questions about Walker's ability to comply with the terms of probation. On cross-examination, the prosecutor asked Walker two questions about his willingness to take classes if they were conditions of his probation. After Walker answered that he would, the prosecutor stated he had nothing else. Instead of also resting, Houssiere took Walker on redirect, reminded the jury that Walker had been convicted of assaulting a police officer, and asked Walker about his record for the past twenty years. Walker answered that he had not had any convictions. Houssiere continued, asking Walker whether he had any "problems with law violations during that time." Walker responded that he had had "no misdemeanors, no nothing." On re-cross, the State

tinuing legal education course in criminal law or criminal procedure.

elicited from Walker that, in the previous twenty years, he in fact had been arrested "quite a few" times on charges of unlawfully carrying a weapon, criminal mischief, assault with bodily injury, and reckless conduct; on one occasion, police seized a gun from Walker's house. Walker testified that he was not convicted as a result of any of these arrests, some of the charges were dismissed, and in the assault case someone else confessed. However, in its closing argument, the State reminded the jury that it "heard [ ] Walker this morning tell about his history" and asked the jury to "[t]ake that into consideration." The jury was not instructed that it could consider the unadjudicated offenses in assessing punishment only if it found the offenses had been proven beyond a reasonable doubt. *See* TEX.CODE CRIM. PROC. ANN. art. 37.07, § 3(a) (Vernon Supp.2005); *Huizar v. State*, 12 S.W.3d 479, 484 (Tex. Crim.App.2000) (op. on reh'g) (trial court is required to so instruct the jury). And Houssiere did not object to the absence of this instruction.

Although unadjudicated arrests may be admissible in the punishment phase of a criminal trial, *see* TEX.CODE CRIM. PROC. ANN. art. 37.07 § 3(a)(1) (Vernon Supp. 2005), the State in this case had made clear it did not intend to call any witnesses; nor did it cross-examine Walker about his arrest history. It was not until Walker's own attorney took Walker on redirect and asked broadly whether he had had any "problems with law violations" in the last twenty years that the arrests were raised. The record establishes that Houssiere did not know the answer to the question because he did not think investigation of Walker's criminal history was necessary to defend his client and because he believes requests for notice of extraneous offenses and bad acts, *see id.* § 3(g), are "a waste of time." A strategic choice to open the door to evidence of Walker's arrest

history, made after no investigation and no knowledge of that history, is not a reasonable decision, just as deliberately choosing to be ignorant of his client's arrest history is an unsound strategy that falls below an objective standard of reasonableness. So too was Houssiere's failure to object to the absence of a reasonable-doubt instruction.

 When evidence of unadjudicated offenses is introduced during the punishment phase of the trial, the court must instruct the jury that it may not consider extraneous-offense evidence in assessing punishment unless it finds the extraneous offenses have been proven beyond a reasonable doubt. *Huizar v. State*, 12 S.W.3d at 484. Houssiere testified he did not ask for a reasonable-doubt instruction in the charge because he did not want the jury to think Walker was hiding something and because he presumed the jury would not believe Walker committed an act simply because he was arrested for it. However, the instruction is required precisely because a jury might consider such evidence in assessing punishment without proof beyond a reasonable doubt. *See id.* The trial court errs in failing to sua sponte include the instruction in the charge, *see id.*, and counsel was deficient in failing to object to its absence. *See Allen v. State*, 47 S.W.3d 47, 54 (Tex.App.-Fort Worth 2001, pet ref'd).

### *Prejudice*

We have held that counsel performed deficiently in his representation of Walker by (1) failing to ask any questions in voir dire about potential bias; (2) failing to investigate or interview Walker in detail about his criminal history or his prior contacts with Payne; (3) failing to seek discovery from the State pursuant to Rules 404 and 609 of the Texas Rules of Evidence; (4) failing to file and obtain rulings

on a motion in limine to require the State to raise extraneous matters outside the presence of the jury; (5) failing to prepare Walker to testify; (6) failing to object to evidence of inadmissible extraneous matters during the guilt phase; (7) inviting evidence of unadjudicated arrests during the punishment phase; and (8) failing to object to failure of the punishment-phase charge to include a reasonable doubt instruction. We must now determine whether these acts and omissions, "in their totality, prejudiced the defense." *Ex parte Nailor*, 149 S.W.3d at 130.

As both the State and Houssiere recognized in their closing arguments, the jury's decision on guilt turned upon whether they believed Payne's and Scott's version of the arrest or that of Walker and his two witnesses. The only attack the State made on the credibility of Walker's witnesses was to point out that they were either related to him or lived on his property; and the State's only attack on Walker's credibility was in the form of extraneous offense and "bad acts" evidence, which would have been excluded but for Houssiere's deficient performance in permitting the jury to hear evidence that Walker associates with drug users; people in possession of drugs were on his property the night of his arrest; automatic weapons are fired on his property; and Walker callously disregarded the comfort of a dying elderly woman by shooting fireworks. The jury also learned about Walker's stale conviction for assaulting a police officer, giving substance to Payne's and Scott's testimony that Walker threatened them and used force against them.[5] During its closing argument, the State reminded the jury both about the fireworks incident and the drug arrests. And the record quite clearly

establishes that the jury focused on the stale conviction for assaulting a police officer. Less than ten minutes after the jury retired to deliberate, it sent a note asking for clarification of Walker's testimony about the arrest. After the court further instructed the jury, it quickly returned a note advising the court it had a dispute over Walker's cross-examination testimony regarding his prior arrest; this testimony was then read to the jury.

Evidence of extraneous offenses is inherently prejudicial. *Hall v. State*, 161 S.W.3d at 154; *Brown v. State*, 974 S.W.2d 289, 293 (Tex.App.-San Antonio 1998, pet. ref'd). And in this case, in which credibility was the pivotal issue, the extraneous character evidence diminished Walker's credibility with the jury and afforded the jury an evidentiary basis for choosing to believe the State's witnesses. But for counsel's deficient performance, the extraneous character evidence would not have been admitted.

Houssiere's deficient performance was also devastating for Walker in the punishment phase of the trial. Because of counsel's errors, the jury again heard about the stale assault conviction and learned about a number of unadjudicated arrests. And, although Walker testified he had not committed any of the crimes for which he was arrested and the State did not present any evidence that he did, Houssiere failed to insist on the statutorily-required reasonable-doubt instruction. Consequently, the jury clearly heeded the State's suggestion that it consider the evidence it had heard about Walker's criminal history: although the State recommended probation and made no recommendation to the jury about the jail time or fine to assess, the jury sentenced Walker to significantly more

---

**5.** When the jury decided guilt, it was unaware that Walker's assault conviction was twenty-years old.

than Houssiere suggested (a fine of $250 and thirty days in jail, probated for one year)—eight times the fine, six times the jail sentence, and twice the length of probation. But for Houssiere's deficient performance, the jury's decision on punishment would have been based solely on the conduct that was the basis of this offense.

Finally, we must consider and give weight to the fact that the jury deciding Walker's guilt and punishment included not only a mother who suggested during voir dire that her son's status as a state trooper might affect her ability to sit in the case but also a homeland security officer who has had a colleague killed and several others injured by resisting suspects. And, although the statements made by both these jurors in voir dire raised serious questions, Houssiere made no effort whatsoever to determine whether they could be fair to his client.

"The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland,* 466 U.S. at 686, 104 S.Ct. 2052. When viewed in light of the entire record, Houssiere's deficient performance undermines our confidence in the verdict and causes us to conclude that, but for his errors, there is a reasonable probability that the result of the proceedings would have been different. *See id.* at 694, 104 S.Ct. 2052; *see also Menchaca,* 854 S.W.2d at 132–33 (holding that where defendant's guilt or innocence turned on the credibility of the witnesses, counsel rendered ineffective assistance by failing to file a motion in limine regarding inadmissible prior convictions and by failing to object when evidence of the convictions was presented); *Hall,* 161 S.W.3d at 156 (holding that the combined effects

of counsel's failure to object to cross-examination about inadmissible extraneous offenses and to improper charge so undermined the trial process that defendant received ineffective assistance); *Stone v. State,* 17 S.W.3d 348, 353–54 (Tex.App.-Corpus Christi 2000, pet. ref'd) (holding that defendant was deprived of a fair trial with a reliable result where counsel elicited evidence of an inadmissible prior murder conviction, thus diminishing defendant's credibility and giving substance to testimony of State's witnesses that defendant had threatened to kill them). Accordingly, we reverse the trial court's judgment and remand the cause for a new trial.