

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-13-00381-CR

Eric **GONZALEZ**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 79th Judicial District Court, Jim Wells County, Texas
Trial Court No. 12-06-13518-CR
Honorable Richard C. Terrell, Judge Presiding

Opinion by:  Marialyn Barnard, Justice

Sitting:  Marialyn Barnard, Justice
Rebeca C. Martinez, Justice
Patricia O. Alvarez, Justice

Delivered and Filed:  February 19, 2014

AFFIRMED

A jury found appellant Eric Gonzalez guilty of the offense of murder.  Based on the jury's recommendation, the trial court sentenced him to forty years in prison and assessed a $10,000.00 fine.  Gonzalez raises two issues on appeal, contending he received ineffective assistance of counsel and there is legally insufficient evidence to support his conviction.  We affirm the trial court's judgment.

## BACKGROUND

Gonzalez, his half-brother Scotty Salinas, his cousin Andy Gonzalez (the "victim"), and other family members were celebrating Salinas's release from prison. The record shows that later that day, during a dispute, Gonzalez stabbed the victim in the chest with a paring knife. The victim died from his wound. It is undisputed that prior to the dispute and subsequent stabbing, Gonzalez had been drinking substantial amounts of alcohol[1], smoking marijuana, and taking Xanax to have a "good time." The victim had also been drinking alcohol, and Salinas smoked, in his estimation, four grams of marijuana.

The dispute arose when at some point during the celebration, Gonzalez asked Salinas if he wanted to "go party." Salinas testified this called for drinking alcohol and smoking marijuana. The victim argued with Gonzalez over this plan as he thought Salinas should join the family for a barbeque. What happened next is disputed by the eyewitnesses who testified at trial. Fernando Hinojosa, who lived next door to the crime scene, testified Gonzalez pulled out a knife and stabbed the victim "[i]n the heart," then ran from the scene. Salinas testified Gonzalez made an antagonistic statement[2] to the victim who then took off his shirt, rushed at Gonzalez, and "started swinging." Salinas initially turned away from the skirmish, but turned back around when he "heard somebody say that [Gonzalez] poked him." Salinas saw Gonzalez running from the scene as the victim collapsed in the street. Gonzalez's story closely matches that of his half-brother Salinas, but he added that he acted in self-defense, just trying to "cut [the victim] on the arm or something . . . I didn't know I stabbed him."

---

[1] At trial, Gonzalez testified: "I remember I bought three 24's of Budweiser and I bought two Magnums . . . [a]nd I had already drank all that before I got there with Scotty."

[2] Salinas testified: "Andy had told Eric to chill out, bro, that we were going going [sic] to bar-b-que [sic]. And Eric told Andy that I ain't your bro, stop calling me your bro. And he pointed at me saying, this is my brother, and told Andy and offended Andy, told Andy that he was a bitch and a pussy."

After hearing testimony from Hinojosa, Salinas, and Gonzalez, as well as testimony from an investigating officer, a first responder, and the victim's sister, the jury found Gonzales guilty of the offense of murder. The trial court sentenced Gonzalez to forty years confinement in the Institutional Division of the Texas Department of Criminal Justice and assessed a fine of $10,000.00. Thereafter, Gonzalez perfected this appeal.

## ANALYSIS

On appeal, Gonzalez first contends he did not receive effective assistance of counsel as required by the Sixth Amendment. Specifically, Gonzalez argues his trial counsel was ineffective by: (1) failing to ask any questions in voir dire about potential bias or prejudice; (2) voluntarily exposing Gonzalez's criminal history to the jury; (3) failing to adequately investigate the case; (4) making statements that forced Gonzalez to testify in derogation of his Fifth Amendment rights; (5) failing to argue during closing arguments the lesser included offense of manslaughter and for acquittal based on self-defense; and (6) failing to call any mitigation witnesses other than Gonzalez during the punishment phase. In addition to the issue relating to ineffective assistance of counsel, Gonzalez contends the evidence is legally insufficient to support the murder conviction.

### Ineffective Assistance of Counsel

Gonzalez argues his counsel was unconstitutionally ineffective at trial. A criminal defendant has a Sixth Amendment right to effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686 (1984); U.S. CONST. amend. VI. To determine whether counsel's representation was inadequate so as to violate a defendant's Sixth Amendment right to counsel, we apply the United States Supreme Court's two-pronged *Strickland* test. *Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999). Under *Strickland*, a party claiming ineffective assistance of counsel has the burden to establish by a preponderance of the evidence: (1) deficient performance of trial counsel; and (2) harm resulting from that deficiency sufficient to undermine

- 3 -

the confidence in the outcome of the trial. *Ex Parte LaHood*, 401 S.W.3d 45, 49 (Tex. Crim. App. 2013) (citing *Strickland*, 466 U.S. at 687). The assessment of whether a defendant received effective assistance of counsel is made on a case by case basis by looking to the totality of the representation and the particular circumstances of the case. *Thompson*, 9 S.W.3d at 813. Any claim of ineffectiveness must be firmly founded in the record and the record must affirmatively demonstrate the alleged ineffectiveness. *Id.*

### *Voir Dire*

Gonzalez contends his trial counsel performed deficiently by failing to ask any questions in voir dire about potential bias or prejudice. We disagree.

One purpose of voir dire is to elicit information that establishes the basis for a challenge for cause because the veniremen is biased or prejudiced for or against one of the parties or some aspect of the law relevant to the case. *Sanchez v. State*, 165 S.W.3d 707, 710–11 (Tex. Crim. App. 2005) (en banc). Bias exists when a venireperson's beliefs or opinions prevent or substantially impair the performance of their duties as a juror in accordance with their instructions and oath. *Sadler v. State*, 977 S.W.2d 140, 142 (Tex. Crim. App. 1998).

It is true that trial counsel for Gonzalez never used the words "bias" or "prejudice" during his voir dire of the venire. However, counsel did ask, during both general and individual voir dire, if the potential jurors could "be fair" given their personal histories and the circumstances of the case.[3] Although he used words other than "bias" or "prejudice," asking venire members if they can be fair serves the same effective purpose. If a potential juror admits she cannot be fair, counsel will have elicited information to establish the basis for a challenge for cause, thereby properly

---

[3] Gonzalez argues his case is analogous with our prior decision in *Walker v. State* where failing to ask *any* voir dire questions at all was held to be ineffective. *See* 195 S.W.3d 250, 257 (Tex. App.—San Antonio 2006, no pet.). Here, trial counsel participated in voir dire and asked questions. Accordingly, *Walker* is inapposite.

using voir dire to eliminate prejudiced jurors. *See Sanchez*, 165 S.W.3d at 710–11. Accordingly, we hold this did not constitute deficient performance by trial counsel.

### *Gonzalez's Criminal History*

Gonzalez next argues trial counsel was ineffective because he exposed Gonzalez's criminal history to the venire during voir dire and to the jury during opening statements. Counsel for Gonzalez made the following statement during voir dire: "And do you know, if my client is a criminal, does that affect you in any way?" Subsequently during opening statements, counsel made the following three references to Gonzalez's criminal past:

1.) "My client has a record. Let's get it out in the open."

2.) "Just because he's a criminal doesn't mean that he's lying. You just got to figure out whether he's telling the truth."

3.) "Just because he's a criminal and has a record or anything doesn't mean he's guilty of this particular crime. You just have to keep an open mind."

"There is a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance." *Thompson*, 9 S.W.3d at 813; *see Strickland*, 466 U.S. 668. Our review must be highly deferential to trial counsel and avoid the deleterious effects of hindsight. *Thompson*, 9 S.W.3d at 813. As acknowledged in Gonzalez's brief, "[w]hen defending someone with a criminal history, it is sometimes good trial strategy to let the jury know before the State can try to use it to their advantage." Here, trial counsel for Gonzalez appears to reference Gonzalez's criminal history to emphasize to the jury, before the State had a chance to use the history, that Gonzalez's criminal past should not play a part in his current trial. Trial counsel reminded the jury that a criminal past does not make one a *per se* liar and that the jury should focus on guilt for the particular crime at issue. The record reflects that although trial counsel did expose the existence of Gonzalez's criminal history, it was done with a strategic purpose. Given the deference owed

under *Thompson*, and the recognized strategy of exposing the defendant's past criminal history before the State can, we decline to find counsel's performance deficient in this instance.

### *Investigation*

Gonzalez also contends his trial counsel was ineffective because he failed to properly investigate the case and locate additional eyewitnesses. Gonzalez's argument comes in two parts: (1) failing to acquire a court appointed investigator limited the availability of eyewitness for trial, which led to (2) trial counsel having inadequate witnesses for Gonzalez's defense. Essentially, Gonzalez argues his trial counsel's preparation was ineffective because "[o]ther witnesses to this incident could have shed a clearer light on what occurred."

"It is well settled that trial counsel has a duty to make an *independent* investigation into the facts of the case." *Walker*, 195 S.W.3d at 255 (emphasis added); *McFarland v. State*, 928 S.W.2d 482, 501 (Tex. Crim. App. 1996), *abrogated on other grounds by Mosley v. State*, 983 S.W.2d 249 (Tex. Crim. App. 1998) (en banc).[4] The independent investigation must be reasonable or reflect reasonable decisions that make particular investigations unnecessary. *See Strickland*, 466 U.S. at 691 ("counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary."). Here, the record is largely silent as to trial counsel's investigation with regard to other potential eyewitnesses. As with other claims of deficient performance, a claim that counsel did not conduct an effective investigation must be firmly founded in the record. *See Thompson*, 9 S.W.3d at 813. Here, the record does not identify other potential eyewitnesses. Nor does it include information about what their testimony might

---

[4] Gonzalez also directs this court to the ABA Standard for Criminal Justice 4-4.1 "Duty to Investigate" (3d ed. 1993), as authority on this subject. The United States Supreme Court held these standards are not mandatory, rather they "are guides to determining what is reasonable, but they are *only guides*." *Strickland*, 466 U.S. at 688 (emphasis added).

be. Thus, we decline to find counsel's investigation deficient because the basis for Gonzalez's complaint is not firmly founded in the record. [5] *See id.*

### *Fifth Amendment*

Gonzalez next contends his trial counsel's opening statement fell below the standard of prevailing professional norms and actually harmed Gonzalez's defense because counsel made a statement that forced Gonzalez to testify, thereby violating his rights under the Fifth Amendment. During his opening statement, Gonzalez's trial counsel told the jury: "[w]hen a person takes someone's life, he has a duty to explain himself, what happened that night, and he's going to take the stand." Gonzalez argues this statement effectively negated his right under the Fifth Amendment not to testify because the jury would now be expecting such testimony.

A criminal defendant's right against self-incrimination includes the decision of whether to testify during his trial. *See* U.S. CONST. amend. V. Trial counsel's opening statements may have limited the feasibility of Gonzalez exercising that right later in trial, but could also reflect a joint decision with trial counsel that Gonzalez would testify at trial to explain his actions. The record is silent as to the process behind counsel's statement and Gonzalez's subsequent decision to testify, and whether his trial counsel's opening statement merely reflected that decision and strategy. As noted above, any claim of ineffectiveness must be firmly founded in the record. *Thompson*, 9 S.W.3d at 813. Because the record is silent as to the strategy behind counsel's opening statement and Gonzalez's ultimate decision to testify, we decline to hold the opening statement constituted deficient performance in the present case.

---

[5] Gonzalez argues that because the record is silent with regard to any request by trial counsel for a court-appointed investigator, there is evidence in the record establishing deficient representation. We disagree. Without more in the record, it is just as likely there were no other witnesses to be found or that counsel had determined such witnesses would provide testimony detrimental to the case. Moreover, Gonzalez has not directed the court to any authority for the proposition that failing to request a court-appointed investigator, without more, is *per se* deficient performance, and we have found none.

*Closing Argument*

Next, Gonzalez contends his trial counsel's performance was deficient because counsel failed to argue during his closing for the lesser included offense of manslaughter or acquittal based on self-defense. Given the circumstances of the case, the lesser included offense of manslaughter and self-defense were clearly the bases for the defense. Thus, it might be said counsel's performance was deficient in failing to make this part of his closing argument. However, even if deficient, we cannot say that this deficiency undermined the outcome of the trial. *See LaHood*, 401 S.W.3d at 49.

Both the lesser included offense of manslaughter and self-defense were included in the jury charge, and we must presume the jury understood and followed the charge absent evidence to the contrary. *See Taylor v. State*, 332 S.W.3d 483, 492 (Tex. Crim. App. 2011). Gonzalez has presented no evidence to contradict this presumption. Moreover, given the evidence, we cannot say that but for counsel's failure, the outcome would have been different. Thus, we hold Gonzalez has not proven harm by a preponderance of the evidence, given the presumption the jury was aware of the lesser included offense of manslaughter and the claim of self-defense as presented in the charge. *See LaHood*, 401 S.W.3d at 49.

*Punishment Phase*

Finally, Gonzalez contends his trial counsel was deficient in failing to call any mitigating witnesses other than Gonzalez during the punishment phase of the proceedings. Gonzalez directs the court to *Shanklin v. State,* holding counsel ineffective where he failed to call any mitigation witnesses despite the availability of no fewer than twenty witnesses who were willing to testify to the defendant's good character traits. *See* 190 S.W.3d 154, 165 (Tex. App.—Houston [1st Dist.] 2005), *pet. dism'd*, 211 S.W.3d 315 (Tex. Crim. App. 2007). Here, Gonzalez points to the fact

that his trial counsel did not call any family members as mitigation witnesses during the punishment phase of trial.

Although it is true trial counsel did not call any of Gonzalez's family members as mitigation witnesses, "failure to call witnesses at the guilt-innocence and punishment stages is irrelevant absent a showing that such witnesses were available and appellant would benefit from their testimony." *King v. State*, 649 S.W.2d 42, 44 (Tex. Crim. App. 1983) (en banc); *Mares v. State*, 52 S.W.3d 886, 892 (Tex. App.—San Antonio 2001, pet. ref'd). Gonzalez has not directed the court to any evidence in the record to suggest his family members were willing to testify on his behalf or that he would have benefited from their testimony. Accordingly, Gonzalez has not met the standard set out in *King* to show deficient conduct and has clearly not shown any deficient conduct during the punishment phase that is firmly founded in the record. *See Thompson*, 9 S.W.3d at 813. Therefore, we hold the failure alleged by Gonzalez did not constitute deficient performance by trial counsel.

Given the foregoing, we overrule Gonzalez's first issue challenging the effectiveness of trial counsel.

### *Legal Sufficiency*

In his second issue, Gonzalez contends the evidence is insufficient to support his conviction. When reviewing the sufficiency of the evidence, we view all the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Wise v. State*, 364 S.W.3d 900, 903 (Tex. Crim. App. 2012); *see Jackson v. Virginia*, 443 U.S. 307, 318 (1979). In the event the record supports conflicting inferences, we must presume the factfinder resolved the conflicts in favor of the verdict and defer to that determination. *Wise*, 364 S.W.3d at 903. The factfinder alone determines the weight and credibility of the evidence. *Id.* Therefore, we may not re-evaluate the

weight and credibility of the record and substitute our judgment for that of the factfinder. *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007).

Gonzalez was convicted of the offense of murder. An individual commits murder when he intentionally or knowingly causes the death of another individual, or he intends to cause serious bodily injury and commits an act clearly dangerous to human life that causes the death of an individual. TEX. PENAL CODE ANN. § 19.02(b) (West 2011). A person acts intentionally with respect to a result of his conduct when it is his conscious objective or desire to cause the result. *Id.* § 6.03(a). A person acts knowingly with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result. *Id.* § 6.03(b).

Gonzalez has a two-part legal sufficiency challenge: (1) the testimony of Amanda Gonzalez, the victim's sister and Gonzalez's cousin, negates Gonzalez's requisite mental state for murder; and (2) the testimony of Hinojosa, the State's only eyewitness, was so inconsistent and unreliable that no rational juror could convict Gonzalez on this testimony alone.

Amanda Gonzalez testified that when she ran into Gonzalez after the stabbing, "[h]e looked pale, really pale in the face, like shocked." Gonzalez contends this testimony negates both of the mental states required for murder because a person is presumably shocked when he does something he did not knowingly or intentionally do. We disagree.

Gonzalez's interpretation of Amanda's testimony is debatable; it is equally likely he appeared shocked after the stabbing because he realized he killed his cousin. However, even if Amanda's testimony did support an inference that Gonzalez did not have the requisite mental state for murder, "we must presume the factfinder resolved the conflicts in favor of the verdict and defer to that determination." *Wise*, 364 S.W.3d at 903. Accordingly, we presume the jury resolved any potential conflict about Gonzalez's mental state created by Amanda's testimony and defer to the jury's verdict.

As to the testimony of Hinojosa, we agree, as Gonzalez argues, that it is inconsistent and unreliable. Hinojosa's version of the events changed multiple times throughout his testimony. Further, Hinojosa admitted to drinking alcohol on the day of the crime, which puts the clarity of his recollection at issue. However, the jury *alone* determines the weight and credibility of the evidence. *Wise*, 364 S.W.3d at 903. (emphasis added). As noted above, we may not re-evaluate the weight and credibility of the record and substitute our judgment for that of the factfinder, and we refuse to do so now. *Williams*, 235 S.W.3d at 750. Accordingly, we defer to the jury's verdict, which is a reflection of its credibility determination with regard to Hinojosa's testimony.

Gonzalez's legal sufficiency challenge also fails because, beyond Hinojosa's potentially flawed testimony and Amanda's testimony about Gonzalez's "shocked" state, there is other evidence that independently supports the jury's verdict. It is undisputed by Gonzalez that he and the victim were involved in a confrontation, Gonzalez was under the influence of numerous illegal substances,[6] and Gonzalez stabbed the victim. According to Salinas's account of the events, Gonzalez antagonized the victim and clearly had an aggressive state of mind immediately before the stabbing. Gonzalez told the victim "I ain't your bro, stop calling me your bro," and then called the victim a "bitch and a pussy" for not wanting to go "party" instead of attending a family barbeque. Admittedly, a fight ensued. Gonzalez concedes he used a knife on the victim to "cut him," and this intentional act led to the death of the victim. We hold Gonzalez's and Salinas's accounts alone are sufficient to meet the Penal Code's definition of murder because Gonzalez "intend[ed] to cause serious bodily injury and commit[ted] an act clearly dangerous to human life that cause[d] the death of [the victim]." TEX. PENAL CODE ANN. § 19.02(b). When viewing the

---

[6] In Gonzalez's own words at trial: "Well, I was drinking, smoking [weed], getting all f____ up. Excuse me. I was just having a good time, right." In addition to drinking alcohol, Gonzales, who was underage, admitted to smoking marijuana and taking four to six Xanax tablets on the day of the murder.

accounts of the events in the light most favorable to the verdict, a rational trier of fact could have found the essential elements of murder beyond a reasonable doubt. *See Wise*, 364 S.W.3d at 903. Accordingly, we hold the evidence is legally sufficient to support the jury's verdict and overrule Gonzalez's second issue.

## CONCLUSION

Based on the foregoing, we overrule Gonzalez's issues and affirm the trial court's judgment.

Marialyn Barnard, Justice

Do Not Publish