**Affirmed in Part, Reversed and Remanded in Part, and Majority and Dissenting Opinions filed August 4, 2016.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-15-00313-CR

---

### ALVIN WESLEY PRINE, JR., Appellant

### V.

### THE STATE OF TEXAS, Appellee

---

**On Appeal from the 75th District Court
Liberty County, Texas
Trial Court Cause No. CR30786**

---

## M A J O R I T Y   O P I N I O N

A jury found appellant Alvin Wesley Prine, Jr. guilty of sexual assault. *See* Tex. Penal Code Ann. § 22.011(a)(1) (Vernon 2011). The jury assessed punishment at 20 years' confinement and a fine of $8,000.00. Appellant contends that (1) the evidence was legally insufficient to support the jury's verdict; (2) the jury charge allowed the jury to reach a non-unanimous verdict; and (3) appellant's counsel was ineffective. We affirm appellant's conviction; however, because we

conclude that appellant received ineffective assistance from his appointed counsel during the punishment phase, we remand for a new punishment proceeding.

## BACKGROUND

Complainant and her boyfriend participated in a trail ride on December 1, 2012. After the trail ride, a number of the riders camped out and held a party in a field behind a bar in Dayton, Texas. Complainant became very intoxicated and passed out at some point during the early morning hours of December 2. Complainant's boyfriend and another individual carried complainant to a nearby pickup truck and laid her down in the back seat.

Later, complainant's boyfriend went to check on complainant. When he tried to open the door to the truck, somebody pulled it closed from inside. Complainant's boyfriend heard complainant calling for him from inside the truck, and when he looked in through the window he saw someone on top of complainant. Complainant appeared to be naked from the waist down.

Complainant's boyfriend jerked the truck's door open and encountered appellant — whom the boyfriend had known for more than 10 years — on top of complainant. Appellant got out from the other side of the truck, ran to his own truck, and drove off. Based on witnesses' description of appellant, police arrested appellant as he was driving down the road shortly after the incident.

Appellant was charged with the sexual assault of complainant. After a trial in March 2015, a jury found appellant guilty. This appeal ensued.[1]

---

[1] This appeal was transferred to the Fourteenth Court of Appeals from the Ninth Court of Appeals. In cases transferred by the Supreme Court of Texas from one court of appeals to another, the transferee court must decide the case in accordance with the precedent of the transferor court under the principles of stare decisis if the transferee court's decision would have been inconsistent with the precedent of the transferor court. *See* Tex. R. App. P. 41.3.

ANALYSIS

## I. Legal Sufficiency of the Evidence

In his first issue, appellant contends the evidence was legally insufficient to support his sexual assault conviction because the evidence demonstrates only an attempted sexual assault.

### A. Standard of Review

The legal sufficiency standard of review is the only standard we apply in determining whether the evidence is sufficient to support each element of a criminal offense that the State is required to prove beyond a reasonable doubt. *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010). When reviewing the legal sufficiency of the evidence, we consider all of the evidence in the light most favorable to the verdict to determine whether, based on that evidence and the reasonable inferences therefrom, a jury was rationally justified in finding guilt beyond a reasonable doubt. *Temple v. State*, 390 S.W.3d 341, 360 (Tex. Crim. App. 2013). In making this review, we consider all evidence in the record, whether it was admissible or inadmissible. *Winfrey v. State*, 393 S.W.3d 763, 767 (Tex. Crim. App. 2013). Direct evidence and circumstantial evidence are equally probative, and circumstantial evidence alone may be sufficient to uphold a conviction so long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction. *Ramsey v. State*, 473 S.W.3d 805, 809 (Tex. Crim. App. 2015).

The jury is the sole judge of credibility and weight to be attached to the testimony of witnesses. *Temple*, 390 S.W.3d at 360. We defer to the jury's responsibility to fairly resolve or reconcile conflicts in the evidence, and we draw all reasonable inferences from the evidence in favor of the verdict. *Isassi v. State*,

3

330 S.W.3d 633, 638 (Tex. Crim. App. 2010). In conducting a sufficiency review, we do not engage in a second evaluation of the weight and credibility of the evidence, but only ensure the jury reached a rational decision. *Young v. State*, 358 S.W.3d 790, 801 (Tex. App.—Houston [14th Dist.] 2012, pet. ref'd).

**B.    Discussion**

Substantial evidence was presented at trial that appellant was in the vehicle with complainant. The defense conceded the issue in its closing argument and argued that the jury should consider the lesser-included offense of attempted sexual assault.

Appellant contends on appeal that the evidence was legally insufficient to support the jury's finding of sexual assault. Appellant argues that no evidence was presented regarding how long appellant was in the truck; no one testified to seeing appellant penetrating or touching complainant's vagina; and the only person who testified that a sexual assault occurred was complainant, who could not identify the perpetrator. Appellant further contends that there was no physical evidence linking appellant to a sexual assault — the results of complainant's sexual assault examination did not reveal appellant's DNA. We summarize the relevant evidence below.

Complainant testified at trial that she remembered "somebody . . . poking around with their penis in [her] private area" in the backseat of the truck. She testified that she initially thought it was her boyfriend, but when the individual started talking she realized it was not and called for her boyfriend. Complainant could not remember what happened next. Complainant also did not know who assaulted her and testified that she could not remember ever having seen appellant before.

Complainant later testified that she remembered somebody having sex with her and "somebody putting their penis into [her]," but she could not remember who the individual was. Complainant testified that, as a result of the sexual assault, she was so sore she had trouble sitting down for the next two days.

Complainant's boyfriend testified that when he jerked open the door of the truck, he saw appellant on top of complainant. He had no doubt it was appellant because he had known appellant for more than 10 years and appellant's face was within a foot of his face. The boyfriend testified that complainant was naked from the waist down and that appellant was "[b]etween her legs." The boyfriend further testified, however, that he did not know if appellant's penis had touched or penetrated complainant's vagina. When the boyfriend confronted appellant, appellant "cussed [him] and took off."

Two other individuals who were at the field party saw appellant get inside the backseat of the truck. The first witness testified that he saw appellant get in the truck with complainant and saw that "[t]hey were laying down," but could not tell if they were clothed or not.

The second witness testified that before appellant went into the truck, appellant said something along the lines of "I bet I can get her pants off." The witness later walked by and saw appellant in the backseat of the truck with complainant, and saw that complainant "didn't have any clothes on." After the confrontation between appellant and complainant's boyfriend, the witness saw that appellant was "pulling his pants up" as he got out of the truck. On cross-examination, the second witness conceded that he did not see whether appellant also pulled his underwear up.

In addition to the two witnesses who saw appellant getting into the truck, two other witnesses testified that they saw appellant get out of the truck after the

confrontation.  One of them testified that when complainant's boyfriend opened the truck door, he said, "Why are you trying to have sex with my girl?  She's 19, and you're 54."  She could not say whether appellant was having sex with complainant, but testified that when appellant got out of the truck he was "shuffling" in his blue jeans.

The other witness testified that when complainant's boyfriend opened the truck door he threw his beer and said, "[Appellant] is fucking my girl."  She testified that appellant went out the other door and was "trying to put his pants on," before he took off running.

The jury could have concluded beyond a reasonable doubt that appellant sexually assaulted complainant based on complainant's testimony that she remembered "somebody putting their penis into [her]" and that she was sore for several days after the incident; the boyfriend's testimony that appellant was on top of complainant in the backseat of the pickup truck, that complainant was naked from the waist down, and that appellant was "[b]etween her legs;" one witness's testimony that he saw appellant climb into the backseat of the truck and later saw appellant and complainant "laying down;" another witness's testimony that he saw appellant in the backseat with complainant, who "didn't have any clothes on;" and the testimony from several witnesses that appellant fled the scene after the confrontation and was pulling his pants up as he ran away.[2]  *See, e.g.*, *In re E.I.G.*,

---

[2] Appellant points to evidence suggesting that a second individual, David Ramirez, possibly was involved in the sexual assault.  Ramirez allegedly also was charged with the sexual assault of complainant, but the outcome of that proceeding, if it took place, is not in our record.  Appellant contends that Ramirez was the one who sexually assaulted complainant, and that appellant subsequently was attempting to assault complainant but was caught before he was able to complete the assault.

Testimony was presented at trial that appellant and Ramirez were together when appellant opened the truck door and climbed inside.  One witness testified that he saw Ramirez with feces on his hand, and the evidence indicated that complainant's pants (which were found

6

346 S.W.3d 644, 647 (Tex. App.—El Paso 2009, no pet.) (evidence that appellant was in bedroom with victim for 45 minutes, another person saw appellant on top of victim and appellant immediately jumped off, victim was naked from the waist down, victim later testified that her vagina hurt, and appellant told the witness that he had had sex with victim was sufficient to support sexual assault conviction even though no physical evidence connected appellant to crime, no witnesses saw appellant actually engaged in sexual assault, and victim could not identify appellant because she was unconscious at the time); *see also Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) ("Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt."). Viewing the above evidence in the light most favorable to the verdict, we conclude based on that evidence and the reasonable inferences therefrom that the jury was rationally justified in finding appellant guilty of sexual assault beyond a reasonable doubt.

Appellant's first issue is overruled.

## II.    Jury Unanimity

In his second and third issues, appellant contends that the trial court's jury charge was erroneous because it allowed the jury to arrive at a non-unanimous verdict.

---

on the floor of the backseat) had been soiled with feces. No witnesses ever saw Ramirez inside the truck.

At most, the evidence suggests that Ramirez may have touched complainant's soiled clothing. Even if the jury believed that Ramirez assaulted complainant, that did not preclude the jury from also concluding that appellant sexually assaulted complainant.

## A. Standard of Review

We review claims of charge error under a two-pronged test. *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984) (op. on reh'g); *Rolle v. State*, 367 S.W.3d 746, 757 (Tex.App.—Houston [14th Dist.] 2012, pet. ref'd). We first determine whether error exists. *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005); *Rolle*, 367 S.W.3d at 757. If error exists, we then evaluate the harm caused by that error. *Ngo*, 175 S.W.3d at 743; *Rolle*, 367 S.W.3d at 757. The degree of harm required for reversal depends on whether error was preserved in the trial court. If error was not preserved, it must be "fundamental" error and requires reversal only if it was so egregious and created such harm that the defendant "has not had a fair and impartial trial." *Barrios v. State*, 283 S.W.3d 348, 350 (Tex. Crim. App. 2009) (quoting *Almanza*, 686 S.W.2d at 171); *Rolle*, 367 S.W.3d at 757.

## B. Jury Charge

A person commits the offense of sexual assault if he "intentionally or knowingly: (A) causes the penetration of the anus or sexual organ of another person by any means, without that person's consent; (B) causes the penetration of the mouth of another person by the sexual organ of the actor, without that person's consent; or (C) causes the sexual organ of another person, without that person's consent, to contact or penetrate the mouth, anus, or sexual organ of another person, including the actor." Tex. Penal Code Ann. § 22.011(a)(1). The State did not allege that appellant caused the penetration of complainant's mouth with his sexual organ; therefore, only the first and third manners of commission of the offense are relevant here.

The jury charge stated in relevant part:

You must decide whether the State has proved, beyond a reasonable doubt, four elements. The elements are that:

1. On or about the 2nd day of December, 2012, in Liberty County, Texas,; [sic] and

2. Without the consent of [complainant],

3. The defendant, [appellant], did then and there intentionally or knowingly;

4. Cause

      a. the penetration of the sexual organ of [complainant]

            i. by [appellant's] finger, or

            ii. by [appellant's] penis,

      b. OR, cause the contact of the sexual organ of [complainant] by [appellant's] penis.

You must all agree on elements 1, 2, 3, and 4 listed above.

If you all agree the State has proved each of the four elements listed above, you must find the defendant "guilty."

If you all agree the State has failed to prove, beyond a reasonable doubt, one or more of elements 1, 2, 3, and 4 listed above you must find the defendant "not guilty."

If you should find from the evidence that the defendant is not guilty, or if you have a reasonable doubt as to whether the defendant is guilty thereof, then you will acquit the defendant and of Sexual Assault, and next consider whether the Defendant is guilty of the lesser included offense of Criminal Attempted Sexual Assault.[3]

---

[3] The jury charge generally followed Count I of the indictment, which contained three paragraphs alleging (1) penetration of complainant's sexual organ by appellant's finger; (2) penetration of complainant's sexual organ by appellant's penis; and (3) contact of complainant's sexual organ by appellant's penis.

The indictment also included a second count — which alleged that appellant penetrated complainant's anus with his finger — but the State abandoned the second count before deliberations.

**C.      Jury Unanimity Generally and as it Relates to the Charged Offense**

Under Texas law, jury unanimity is required in all criminal cases. *Jourdan v. State*, 428 S.W.3d 86, 94 (Tex. Crim. App. 2014). Unanimity in this context means each juror agrees that the defendant committed the same, single, specific criminal act. *Ngo*, 175 S.W.3d at 745. Jury unanimity is required on the essential elements of the offense, but is generally not required on the alternate modes or means of commission. *Pizzo v. State*, 235 S.W.3d 711, 714 (Tex. Crim. App. 2007) (citing *Jefferson v. State*, 189 S.W.3d 305, 311 (Tex. Crim. App. 2006)). It is proper for an indictment to allege different means of committing the same offense and for the jury to be charged disjunctively. *See Kitchens v. State*, 823 S.W.2d 256, 258 (Tex. Crim. App. 1991).

It can be difficult to determine whether subsections of a statute allege different means of commission of a single offense, or whether each subsection constitutes a discrete statutorily defined offense.

In *Vick v. State*, 991 S.W.2d 830, 832-33 (Tex. Crim. App. 1999), the Court of Criminal Appeals considered whether different subsections under the aggravated sexual assault statute constituted discrete statutorily defined offenses for purposes of double jeopardy. Reviewing the elements of the aggravated sexual assault statute, the court noted that the statute "is a conduct-oriented statute; it uses the conjunctive 'or' to distinguish and separate different conduct; and its various sections specifically define sexual conduct in ways that usually require different and distinct acts to commit." *Id.* at 833. Those considerations led the court "to conclude that the Legislature intended that each separately described conduct constitutes a separate statutory offense." *Id.* The court also noted that "the

Legislature, through the language of the statute, has rejected grouping aggravated sexual assaults by 'transaction.'" *Id.*

Applying the concept that each subsection of the statute constituted a discrete offense to the facts of that case, the court concluded that causing the victim's sexual organ to contact the defendant's mouth and penetrating the victim's sexual organ with the defendant's sexual organ were distinct offenses, "despite the fact both are violations of a single statute." *Id.*

In *Pizzo*, the Court of Criminal Appeals considered whether a jury charge improperly permitted a non-unanimous verdict on a claim of indecency with a child where the charge alleged that the defendant engaged in sexual contact "by touching the genitals or breasts of [the child]." 235 S.W.3d at 713. The statute at issue provided that a person commits the offense if they engage in "sexual contact with the child," and defined "sexual contact" as "any touching of the anus, breast, or any part of the genitals of another person with intent to arouse or gratify the sexual desire of any person." *Id.* at 715. Analyzing the legislative intent of the statute and drawing guidance from its decision in *Vick*, the court concluded that

> "Sexual contact," as defined in Section 22.01(B), criminalizes three separate types of conduct—touching the anus, touching the breast, and touching the genitals with the requisite mental state. Therefore, each act constitutes a different criminal offense and juror unanimity is required as to the commission of any one of these acts. Because the indictment charged Pizzo with touching the breasts and genitals of A.S. in the conjunctive, Pizzo's right to a unanimous verdict was possibly violated by the trial judge's jury instruction charging breasts and genitals in the disjunctive. . . . [T]he instruction here allowed the jury to convict Pizzo without reaching a unanimous verdict on the same act. It is possible that six jurors convicted Pizzo for touching the breasts of A.S. while six others convicted Pizzo for touching the genitals of A.S.

*Id.* at 719.

11

In *Jourdan v. State*, the jury charge required conviction if the jury found that the defendant (1) contacted the victim's sexual organ with his own sexual organ; (2) penetrated the victim's sexual organ with his own sexual organ; or (3) penetrated the victim's sexual organ with his finger. 428 S.W.3d at 90. The Court of Criminal Appeals identified three potential jury unanimity problems, in that the charge "authorized the jury to convict the applicant without discriminating whether he: (1) *contacted* [the victim's] sexual organ with his own sexual organ versus *penetrated* her sexual organ with his own; (2) penetrated [the victim's] sexual organ with his own *sexual organ* versus penetrated her sexual organ with his *finger*; or (3) *contacted* [the victim's] sexual organ with his own *sexual organ* versus *penetrated* her sexual organ with his *finger*." *Id.* at 94 (emphasis in original).

The appellant in *Jourdan* challenged only the second category — penile penetration versus digital penetration. *Id.* With respect to that category, the court concluded that where the only allegation was the penetration of a single orifice of a single victim during the course of a single transaction, the penetration itself was the offense and there was no jury unanimity requirement as to the means used to achieve the penetration. *Id.* at 96.

The court went on to analyze the other two categories of potential non-unanimity. Regarding the first category — penile contact versus penile penetration — the court concluded that there could not have been error because there could not have been a lack of jury unanimity as to contact; "[e]very juror who found penetration would by necessity have also found contact, and there could be no lack of agreement, therefore, that appellant *at least* caused [the victim's] sexual organ to contact his own." *Id.* at 97 (emphasis in original). Regarding the third category — penile contact versus digital penetration — the court suggested that the potential

for a non-unanimous verdict was likely error, but because the issue was not raised on appeal the court declined to explicitly resolve the issue. *Id.* Based on the facts of that case, however, the court determined that, even assuming the charge was erroneous, the appellant did not suffer egregious harm. *Id.* at 98.

Finally, in *Aekins v. State*, 447 S.W.3d 270 (Tex. Crim. App. 2014), the court again emphasized that discrete acts within the same statute or subsection each may require jury unanimity:

> A person who commits more than one sexual act against the same person may be convicted and punished for each separate and discrete act, even if those acts were committed in close temporal proximity. . . . The defendant might touch a child's breast; then he touches her genitals. Two separate acts, two separate impulses, two separate crimes.

> This is true for acts violating not only different statutes, but different subsections of a single statute, and even different discretely prohibited acts within the same subsections. . . . Jury unanimity is required for these distinct acts, but it is *not* required for the different means of committing a single distinct act (e.g., penetrating the anus with the defendant's finger, mouth, or sexual organ.) Thus, for example, the State might charge the defendant with a single count of aggravated sexual assault for penetrating a child's sexual organ and allege several different means—penis, finger, mouth, or other object—if there was one sexual assault, but the child is uncertain of what the defendant used to penetrate. What matters is the sexual assault upon the victim, not what the defendant used to commit that discrete assault.

*Id.* at 278-79 (emphasis in original).

### D. Application

The jury charge allowed the jury to convict appellant if it found one of three possible actions constituting sexual assault: (1) penetration of complainant's sexual organ by appellant's finger; (2) penetration of complainant's sexual organ

by appellant's penis; or (3) contact of complainant's sexual organ by appellant's penis.

In his second issue, appellant contends that the charge erroneously allowed the jury to convict appellant without unanimity as to whether appellant (1) contacted complainant's sexual organ with his penis; or (2) penetrated complainant's sexual organ with his finger. In his third issue, appellant contends that the charge erroneously allowed the jury to convict appellant without unanimity as to whether appellant penetrated complainant's sexual organ with his penis or with his finger.[4]

We begin by considering appellant's third issue.

### 1. Penetration by penis or finger

In *Jourdan v. State*, the Court of Criminal Appeals considered whether it was error for a jury charge to allow a conviction without jury unanimity regarding "whether the appellant penetrated [the complainant] with his own sexual organ or, instead, with his finger."[5] 428 S.W.3d at 94.

The State maintained that penetration by appellant's penis or by his finger constituted alternative "means of committing the same statutorily defined offense—two ways of causing the penetration of [the complainant's] sexual organ." *Id.* The Court of Criminal Appeals agreed, concluding that "[t]he jury was

---

[4] Appellant does not contend on appeal that it was error for the jury charge to allow conviction without unanimity based on the third possible combination of allegations in the charge: whether appellant contacted or penetrated complainant's sexual organ with his penis. *See Jourdan*, 428 S.W.3d at 97 ("In the single transaction presented in this case, the appellant cannot have penetrated Kemp's sexual organ without having first contacted it.").

[5] The appellant in *Jourdan* was charged with aggravated sexual assault. 428 S.W.3d at 88 n.4, 89 n.5; *see also* Tex. Penal Code Ann. § 22.021(a)(1)(A) (Vernon Supp. 2015). The aggravated sexual assault statute is identical to the sexual assault statute involved in this case, except that it also requires an additional aggravating factor. *Compare* Tex. Penal Code Ann. § 22.021(a)(1)(A), *with* Tex. Penal Code Ann. § 22.011(a)(1).

not required to reach unanimity with respect to whether the appellant penetrated [the complainant] with his penis or his finger during that transaction." *Id.* at 96.

Here, the evidence at trial regarding penetration included complainant's testimony that she remembered "somebody . . . poking around with their penis in [her] private area" and "somebody putting their penis into [her]." There was no evidence presented that appellant (or anybody else) penetrated complainant's sexual organ with a finger.

Even if some jurors believed that digital penetration occurred, the jury's split belief between penile or digital penetration — of the same orifice of the sole complainant during the same transaction — constituted a single offense under section 22.011(a)(1)(A), and the jury was not required to reach unanimity regarding the means of commission. *See* Tex. Penal Code Ann. § 22.011(a)(1)(A) (penetration "by any means" constitutes an offense); *Jourdan*, 428 S.W.3d at 96 ("We conclude that, in this case, the penetration of a single orifice (the sexual organ) of the one victim (Kemp) during the same transaction constituted but one offense under Section 22.021(a)(1)(A)(i), regardless of the various manner and means by which the evidence may show that the penetration occurred. The jury was not required to reach unanimity with respect to whether the appellant penetrated Kemp with his penis or his finger during that transaction."). Accordingly, it was not error for the jury charge to allow conviction based on penetration of complainant's sexual organ by either appellant's finger or penis.

Appellant's third issue is overruled.

### 2. Penetration by finger vs. contact by penis

Based on the court's charge, the jury could have convicted appellant without reaching agreement about whether appellant caused complainant's sexual organ to

contact his own, or, alternatively, penetrated complainant's sexual organ with his finger. We must determine whether the charge was erroneous in this respect.

Considering the same question in *Jourdan*, as briefly discussed above, the Court of Criminal Appeals noted that "[t]hese two theories of . . . sexual assault almost certainly constitute separate offenses in contemplation of *Vick*, since they stem from separate subsections of the statute and constitute discretely specified conduct by which . . . sexual assault may be committed." 428 S.W.3d at 97. Based on the possibility that the jury non-unanimously convicted on alternate theories of penile contact or digital penetration, the court determined that it was "unable to say, therefore, that the jury necessarily reached unanimity with respect to at least one of these theories of aggravated sexual assault." *Id.* at 98. Although the court did not explicitly determine that the charge was error, it nevertheless proceeded to conduct a harm analysis. *Id.* at 97-98.

Following the court's reasoning in *Jourdan*, we agree that contacting complainant's sexual organ with appellant's penis and penetrating complainant's sexual organ with appellant's fingers constitute two discrete offenses. We conclude that the jury instruction improperly charged two separate offenses in the disjunctive and therefore permitted a conviction on a less-than-unanimous verdict. The jury should have been required to find unanimously beyond a reasonable doubt that appellant committed one offense or the other, and the trial court's submission of a charge that did not require unanimity in this regard was error.[6] We next determine whether the error was harmful.

---

[6] The jury instruction requiring that the members of the jury "must all agree on elements 1, 2, 3, and 4 listed above" was not sufficiently specific to avoid error in this instance, as the jury may have believed they could disagree as to the manner by which element 4 was satisfied, so long as they all agreed element 4 was satisfied by one of the possible means. *See Cosio v. State*, 353 S.W.3d 766, 774 (Tex. Crim. App. 2011) ("Further, as in *Ngo*, the standard, perfunctory unanimity instruction at the end of each charge did not rectify the error. The jury may have

### 3.    Harm analysis

Appellant did not object to the jury charge and therefore did not preserve error.  Accordingly, appellant must establish that he suffered egregious harm from the error in order to warrant reversal of his conviction.  *See Almanza*, 686 S.W.2d at 171.

"An egregious harm determination must be based on a finding of actual rather than theoretical harm."  *Arrington v. State*, 451 S.W.3d 834, 840 (Tex. Crim. App. 2015) (quoting *Cosio v. State*, 353 S.W.3d 766, 777 (Tex. Crim. App. 2011)).  To establish actual harm, the charge error must have (1) affected the very basis of the case, (2) deprived the defendant of a valuable right, or (3) vitally affected a defensive theory.  *Cosio*, 353 S.W.3d at 777.

When assessing harm based on the particular facts of the case, we consider: (1) the charge; (2) the state of the evidence, including contested issues and the weight of the probative evidence; (3) the parties' arguments; and (4) all other relevant information in the record.  *Id.*

Considering the jury charge, the charge authorized conviction if the jury found that appellant caused "the penetration of the sexual organ of [complainant] . . . by [appellant's] finger, or by [appellant's] penis, . . . OR, cause[d] the contact of the sexual organ of [complainant] by [appellant's] penis."  As we have discussed above, although the charge required all jurors to agree that a sexual assault had been committed, it did not require the jury to agree on exactly which sexual assault was committed.  Some jurors could have believed that appellant contacted complainant's sexual organ with his penis, while others may have believed that he

---

believed that it had to be unanimous about the offenses, not the criminal conduct constituting the offenses.").

17

penetrated complainant's sexual organ with his finger. This factor weighs in favor of a finding of harm.

The state of the evidence, however, suggests that appellant was not harmed by this charge. Complainant testified that she remembered somebody having sex with her; she remembered "somebody . . . poking around with their penis in [her] private area;" and she remembered "somebody putting their penis into [her]." Other witnesses testified that they saw appellant on top of complainant in the backseat of the truck; that complainant was not wearing any pants; and that appellant was pulling his pants up as he exited the truck. This evidence supports that appellant either contacted or penetrated complainant's sexual organ with his penis.

On the other hand, no evidence was presented that appellant (or anybody else) penetrated complainant's sexual organ with a finger. Appellant contends that complainant's testimony that she was sore for several days after the assault is evidence that complainant was penetrated by "a finger, several fingers or a complete hand." But there was no evidence before the jury to support this conclusion, and it is equally likely that complainant may have been sore after being penetrated by appellant's penis — a conclusion that was supported by the evidence. Accordingly, it is highly unlikely that any juror believed appellant penetrated complainant with his finger.

Having concluded that the evidence supports a finding of contact or penetration by appellant's penis — between which acts jury unanimity was not required — and that it was highly unlikely that any member of the jury concluded that appellant penetrated complainant's sexual organ with his finger, this evidence supports a finding that appellant was not egregiously harmed by the erroneous charge. *See Irielle v. State*, 441 S.W.3d 868, 878-79 (Tex. App.—Houston [14th

18

Dist.] 2014, no pet.) (charge error was not egregious because, "under any view of the evidence, the likelihood of non-unanimity is exceedingly remote"); *see also Jourdan*, 428 S.W.3d at 98 ("[A]ppellant's primary defensive posture . . . was that no sexual assault took place. Having convicted the appellant, the jury obviously rejected his version of the event. Whether or not the jury believed the appellant's exculpatory testimony was not a function of its ability to agree whether he penetrated her sexual organ digitally or contacted it with his penis. Thus, any error in the jury charge in failing to require such agreement did not serve to undermine the particular defense he chose to pursue.").

Concerning the parties' arguments, appellant contends that "both sides, either in voir dire or final argument, reinforced the incorrect sexual assault application paragraph of the jury charge." Our review of the record reveals that, while both sides discussed the relevant portion of the charge at some point during either voir dire or closing arguments, neither side did anything more than simply restating the charge. During voir dire, the State told the jury, "I have to prove that the defendant, [appellant], caused the penetration of the sex organ of [complainant] by the sexual organ of the defendant without the consent of [complainant] or I have to prove that caused [sic] the contact of the sexual organ of [complainant] by the sex organ of the defendant without her consent or I have to prove caused [sic] the penetration of her anus[7] by his finger and it was without her permission." Appellant's counsel contended during closing argument that, "now we're only dealing with count 1; and count 1 is the sexual assault charge either by penetration by the finger, the penis, or by contact with defendant's penis to the sexual organ of [complainant]."

---

[7] This appears to be in reference to the second count of the indictment, which the State later abandoned. Notably, the State did not argue before the jury that they could convict based on penetration of complainant's sexual organ by appellant's finger.

19

That was the extent of either party referencing the charge and what was required to be proved. Neither party emphasized to the jury that they need not be unanimous on the manner of the sexual assault. *See Jourdan*, 428 S.W.3d at 98-99 (whether the State emphasized that unanimity was not required was "obviously an important consideration in any analysis of egregious harm," but finding no egregious harm under the facts of that case "notwithstanding the prosecutor's insistence that unanimity was not required"). Accordingly, we cannot say that the factor weighs in favor of egregious harm.

Considering that the evidence would have made the likelihood of a non-unanimous verdict remote, and considering that neither party emphasized to the jury that they need not agree on the discrete act constituting the sexual assault, we conclude that the erroneous charge did not affect the very basis of the case, deprive appellant of a valuable right, or vitally affect appellant's defensive theory. *See Jourdan*, 428 S.W.3d at 99; *Cosio*, 353 S.W.3d at 777. Appellant did not suffer egregious harm, and his second issue is overruled.

### E. Attempted Sexual Assault

While discussing his second and third issues, appellant briefly contends that the portion of the jury charge submitting the lesser-included offense of attempted sexual assault was erroneous because "it gave the jurors the impression that they still had to find Appellant either penetrated the complainant's sexual organ by his penis, or by his finger, or that he caused her sexual organ to contact his penis, rather than attempt to do one of those acts, in order to convict Appellant of Criminal Attempted Sexual Assault." The jury charge instruction on attempted sexual assault was identical to the sexual assault charge, with the exception that it included an element concerning attempt:

1. On or about the 2nd day of December, 2012, in Liberty County,

20

Texas,; [sic] and

2. Without the consent of [complainant],

3. The defendant, [appellant], did then and there intentionally or knowingly;

4. With the specific intent to commit Sexual Assault, perform an act amounting to more than mere preparation that tends but fails to effect the commission of sexual assault;

5. Cause

      a. the penetration of the sexual organ of [complainant]

            i. by [appellant's] finger, or

            ii. by [appellant's] penis,

      b. OR, cause the contact of the sexual organ of [complainant] by [appellant's] penis.

You must all agree on elements 1, 2, 3, 4 and 5 listed above.

If you all agree the [S]tate has proved each of the five elements listed above, you must find the defendant "guilty" of the lesser included offense of Criminal Attempted Sexual Assault.

If you all agree the [S]tate has failed to prove, beyond a reasonable doubt, one or more of elements 1, 2, 3, 4 and 5 listed above you must find the defendant "not guilty."

If you should find from the evidence that the defendant is not guilty, or if you have a reasonable doubt as to whether the defendant is guilty thereof, then you will acquit the defendant and of Criminal Attempted Sexual Assault, and say by your verdict "not guilty."

The charge also included an instruction on criminal attempt that provided that "[a] person commits an offense if, with the specific intent to commit an offense, he does an act amounting to more than mere preparation that tends but fails to effect the commission of the offense intended. It is no defense to prosecution for criminal attempt that the offense attempted was actually committed."

Appellant contends that an ordinary juror would not read the paragraph regarding "an act amounting to more than mere preparation" as applying to, or modifying, the causation paragraph. We disagree. Appellant did not object to the instruction at trial, and does not cite any case law supporting this argument on appeal. While the charge could have been more artfully drafted, the instruction was not confusing or misleading. Absent evidence to the contrary, we presume that the jury understood and followed the jury charge. *Gelinas v. State*, 398 S.W.3d 703, 706 (Tex. Crim. App. 2013); *Hutch v. State*, 922 S.W.2d 166, 172 (Tex. Crim. App. 1996). We reject appellant's contention that the jury charge instruction on attempted sexual assault was erroneous.

## III. Ineffective Assistance of Counsel

In his fourth issue, appellant contends that he received ineffective assistance of counsel at the punishment phase of trial.

### A. Standard of Review

To prevail on a claim of ineffective assistance of counsel, an appellant must show that (1) counsel's performance was deficient because it fell below an objective standard of reasonableness; and (2) the deficient performance prejudiced the defense. *Lopez v. State*, 343 S.W.3d 137, 142 (Tex. Crim. App. 2011) (citing *Strickland v. Washington*, 466 U.S. 668, 689 (1984)).

To satisfy the first prong, appellant must prove by a preponderance of the evidence that trial counsel's performance fell below an objective standard of reasonableness under the prevailing professional norms. *Id.* An appellant must overcome the presumption that trial counsel's actions fell within the wide range of reasonable and professional assistance. *See Garza v. State*, 213 S.W.3d 338, 348 (Tex. Crim. App. 2007). Any allegation of ineffectiveness must be firmly founded

in the record, and the record must affirmatively demonstrate the alleged ineffectiveness. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999); *see also Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005) ("Direct appeal is usually an inadequate vehicle for raising [an ineffective assistance] claim because the record is generally undeveloped."). If counsel's reasons for his conduct do not appear in the record and there is at least the possibility that the conduct could have been grounded in legitimate trial strategy, we will defer to counsel's decisions and deny relief on an ineffective assistance claim. *Garza*, 213 S.W.3d at 348.

To satisfy the second prong, appellant must show that there is a reasonable probability — or a probability sufficient to undermine confidence in the outcome — that the result of the proceeding would have been different but for counsel's unprofessional errors. *Lopez*, 343 S.W.3d at 142. "The determination of harm in the punishment context is difficult because of the scope of evidence that is allowed under Article 37.07, but appellate courts may grant relief where there is a reasonable probability that, but for trial counsel's errors, the sentencing jury would have reached a more favorable verdict." *Ex parte Rogers*, 369 S.W.3d 858, 864 (Tex. Crim. App. 2012).

We consider the totality of the circumstances in determining whether counsel was ineffective. *Thompson*, 9 S.W.3d at 813. Failure to satisfy either prong of the *Strickland* test defeats an ineffective assistance claim. *Strickland v. Washington*, 466 U.S. 668, 697 (1984).

### B. Ineffective Assistance During Punishment Phase

Appellant contends that his appointed trial counsel was ineffective during the punishment phase of trial because he opened the door to admission of an extraneous offense that resulted in a more severe punishment by the jury.

During the punishment phase of trial and after the State had rested, the State learned that appellant had a sexual relationship with a 15-year-old girl who was babysitting for appellant and appellant's then-wife. Appellant allegedly had a child by the babysitter. The State promptly notified appellant's trial counsel — before the defense began its presentation of punishment evidence — that the State intended to attempt to elicit evidence concerning the extraneous offense.

The defense presented its punishment evidence the next day. Appellant's trial counsel first called a probation officer as a witness. The probation officer testified that the burden is on the defendant to prove entitlement to probation; discussed the eligibility requirements for probation; and testified that appellant was a candidate for probation. The State cross-examined the probation officer about whether he had "heard that [appellant] had knocked up a 15-year-old girl when he was already married and had children." Appellant's trial counsel objected that he had not been provided proper notice of the extraneous offense. The trial court withheld its ruling on the objection at that time, but requested the State to reserve that line of questioning for a more appropriate witness. The State then questioned the probation officer concerning his knowledge of the specific facts of this case. After the State's attorney informed the probation officer of the circumstances underlying appellant's conviction, the probation officer — in his final statement before the jury — testified that he did not believe appellant deserved probation.

Appellant's trial counsel also called appellant's aunt and sister, apparently as character witnesses and in an attempt to prove up appellant's eligibility for probation. Trial counsel asked appellant's aunt whether appellant had ever committed any crimes and whether appellant's sexual assault of complainant was consistent with his character. Appellant's aunt replied that, to her knowledge, appellant had not previously committed any crimes and that the sexual assault was

24

"very out of character." The State cross-examined the aunt regarding whether appellant had a child with a 15-year-old babysitter.[8] She admitted that he had; she did not know exactly how old the babysitter was when the incident occurred, but said "she was young."

Appellant's trial counsel called appellant's sister as the final punishment witness. Appellant's trial counsel asked appellant's sister whether appellant had ever committed any crimes that she was aware of, and she replied that he had not. Trial counsel also asked whether appellant's sister believed that appellant condoned rape, and she responded that she did not believe it was something appellant would condone. The State cross-examined the sister about whether appellant had a child with the 15-year-old babysitter who was watching his other child. Appellant's sister testified that he did have a child with the 15-year-old babysitter. The State asked whether appellant's sister believed it was a crime in Texas for an adult to have sex with a 15-year-old, and she said such action constituted a crime.

Appellant frames his fourth issue as a complaint that appellant's trial counsel was ineffective for calling punishment witnesses after the State had rested; these witnesses opened the door to evidence of appellant's prior sexual relationship with a 15-year-old babysitter with whom he had a child.[9] Within his fourth issue,

---

[8] Appellant's trial counsel again objected to this line of questioning, and the objection was overruled.

[9] Appellant does not contend that the extraneous offense evidence was inadmissible. Texas Code of Criminal Procedure article 37.07 provides in part that "evidence may be offered by the state and the defendant as to any matter the court deems relevant to sentencing, including but not limited to . . . any other evidence of an extraneous crime or bad act that is shown beyond a reasonable doubt by evidence to have been committed by the defendant or for which he could be held criminally responsible, regardless of whether he has previously been charged with or finally convicted of the crime or act." Tex. Code Crim. Proc. Ann. art. 37.07 § 3(a)(1) (Vernon Supp. 2015). The record does not reflect whether appellant was arrested or prosecuted for his prior sexual relationship with the 15-year-old babysitter.

appellant also contends that his trial counsel was ineffective for calling the probation officer who, on cross-examination by the State, was "converted to a State's witness" and testified that appellant did not deserve probation. We consider this sub-issue first.

This court considered a similar situation in *DeLeon v. State*, 322 S.W.3d 375, 384 (Tex. App.—Houston [14th Dist.] 2010, pet. ref'd). There, the defendant's trial counsel called a probation officer as a witness during the punishment phase in an apparent attempt to persuade the jury that probation was appropriate. *Id.* at 380, 384. On cross-examination, the probation officer testified that offenders such as the defendant would always be a risk to society; probation did not remove that risk; and "[i]f you want to protect the public, then you put [sex offenders] in a situation where they can't have access to children." *Id.* at 384-85. The defendant received a 14-year sentence out of a possible range between two and 20 years. *Id.* at 386.

The appellant in *DeLeon* contended on appeal that his trial counsel provided ineffective assistance during the punishment phase when he (1) called a probation officer as an expert witness who gave damaging testimony; and (2) failed to object to the prosecutor's questions which elicited the damaging testimony. *Id.* at 384. No record was developed at trial or through hearing on a motion for new trial explaining counsel's deficiencies. *Id.* at 385. We noted that the probation officer's testimony "was particularly damaging to appellant's prospects for probation or a short prison sentence," and concluded, in part, that trial counsel was deficient "for calling [the probation officer] to the stand in the first place." *Id.* We further concluded that "[t]here could have been no strategic reason for producing and permitting such damning testimony," and that "[c]ounsel should have known how [the probation officer] was going to testify on these matters." *Id.* at 385-86.

26

Finally, we concluded that, given the nature of the testimony and the emphasis placed upon it, it was likely that the testimony had an effect on the jury's assessment of punishment. *Id.* Accordingly, we affirmed the conviction, but concluded that the appellant received ineffective assistance of counsel during the punishment phase and remanded for a new punishment hearing. *Id.* at 387.

Appellant argues that the facts of this case are substantially similar to those of *DeLeon*. The State does not address *DeLeon* in its brief. Instead, the State emphasizes that there was no motion for new trial or a hearing addressing trial counsel's strategy, if any. The State urges us to deny relief on that basis.

Following our precedent in *DeLeon*, trial counsel's decision to call the probation officer without first determining whether the probation officer would testify in a harmful way once presented with the specific facts of the case[10] and counsel's failure to object to that harmful testimony establish ineffective assistance of counsel. *See id.* at 385-86; *see also Ex Parte Rogers*, 369 S.W.3d at 863 (trial counsel's failure to object to irrelevant testimony was ineffective assistance where "there was no reasonable trial strategy for trial counsel not to object to the testimony of C.R."); *Mares v. State*, 52 S.W.3d 886, 893 (Tex. App.—San Antonio 2001, pet. ref'd) (where trial counsel's sole strategy during punishment phase was to obtain a probated sentence, trial counsel's failure to object to probation officer's testimony that defendant was not a good candidate for probation fell below an objective standard of reasonableness).

The circumstances in this case are more egregious than those in *DeLeon*, because in this instance the error was compounded by decisions made at trial.

---

[10] According to the probation officer's testimony, his opinion concerning appellant's eligibility for probation was based on a five-minute interview with appellant in which he and appellant did not discuss the facts of the case.

Appellant's trial counsel initially called the probation officer and established through that witness that appellant was eligible for probation. *See Flores v. State*, 487 S.W.2d 122, 128 (Tex. Crim. App. 1972) ("The burden of proof as to an accused's eligibility and entitlement to probation is upon the accused."). The State attempted to question the probation officer on cross-examination about the prior sexual relationship with the 15-year-old babysitter. After counsel's objection, the trial court requested the State to reserve that line of questioning for a more appropriate witness. The State responded, "We have another witness, Judge, we will take it up with."

Appellant's trial counsel then called appellant's two family members. Appellant's trial counsel elicited testimony from the family members that, to their knowledge, appellant had not committed any prior crimes and that his sexual assault in this case was "very out of character" — questions that opened the door to cross-examination concerning the prior sexual relationship with the 15-year-old babysitter. The second witness, appellant's sister, testified as follows:

Q. The baby sitter that was baby-sitting [appellant's oldest daughter], the 15-year-old girl, is actually the mother of [appellant's second child]; isn't that correct?

A. Yes.

Q. Now, do you think it's a crime in the state of Texas to have sex with a 15-year-old person when you're a grown man 20, 30 years of age?

A. Yeah, it's a crime; but if you would have known this 15-year-old person --

Q. That's not my question to you, ma'am. Do you think it's a crime?

A. Yes.

Q. It's rape. Would you agree with that?

A. Trust me it wasn't rape.

28

Q. Yes, ma'am. By the laws of the [S]tate of Texas it's sexual assault.

A. Maybe by the laws of the [S]tate of Texas, yeah.

Q. But he didn't do that, did he?

A. Not when she just let it happen, no.

Q. Is it your testimony it's the 15-year-old girl's fault, not the grown adult?

A. She knew exactly what was going on.

Q. My testimony to you is -- excuse me. Question. Is it your testimony in this courtroom it's the 15-year-old girl's fault, not your brother's fault?

A. Yeah, it was my brother's fault. He's an adult.

Even assuming there was some arguable benefit to calling one of appellant's family members, we cannot discern any reasonable trial strategy for calling the second family member, whose testimony produced no additional benefit to appellant and whose cross-examination provided the State another opportunity to emphasize the prior sexual relationship with the 15-year-old babysitter. *See Walker v. State*, 195 S.W.3d 250, 262 (Tex. App.—San Antonio 2006, no pet.) ("Although unadjudicated arrests may be admissible in the punishment phase of a criminal trial, the State in this case had made clear it did not intend to call any witnesses; nor did it cross-examine Walker about his arrest history. It was not until Walker's own attorney took Walker on re-direct and asked broadly whether he had had any 'problems with law violations' in the last twenty years that the arrests were raised. . . . A strategic choice to open the door to evidence of Walker's arrest history, made after no investigation and no knowledge of that history, is not a reasonable decision . . . .") (citation omitted).

Under the facts of this case, where appellant's trial counsel (1) knew of the State's intention to elicit testimony concerning his prior sexual relationship with

the 15-year-old babysitter, and yet called witnesses who had knowledge of the relationship and who provided no real benefit to appellant's argument for a lesser punishment; (2) failed to properly investigate what the probation officer's testimony would be, and that he would testify in a harmful manner if presented with the facts of the case; and (3) failed to object to the probation officer's testimony that he did not believe appellant deserved probation, where appellant's sole strategy during punishment was to obtain a probated sentence, we conclude that appellant's trial counsel provided ineffective assistance of counsel during the punishment phase. Even in the absence of a motion for new trial or hearing, no reasonable trial strategy can account for these errors, and appointed counsel's actions fell outside the wide range of reasonable and professional assistance. *See Weaver v. State*, 265 S.W.3d 523, 538 (Tex. App.—Houston [1st Dist.] 2008, pet. ref'd) ("[I]t is not speculation to hold counsel ineffective if a silent record clearly indicates that no reasonable attorney could have made such decisions. . . . Therefore, in rare cases, the record can be sufficient to prove that counsel's performance was deficient, despite the absence of affirmative evidence of counsel's reasoning or strategy.").

We next consider whether the deficient performance prejudiced the defense. *See Strickland*, 466 U.S. at 689. Based on the totality of the circumstances, we cannot say that it did not.

For one, the very witness who testified about appellant's eligibility for probation further testified that, in his opinion, appellant did not deserve it. Moreover, only two other witnesses testified during the defense's punishment case: appellant's close family members whose credibility was tarnished with evidence of appellant's prior sexual relationship with a 15-year-old and with their apparent assent to that relationship.

The State repeatedly emphasized the prior relationship during its nine-page closing argument:

> . . . [Appellant] wants you to give him the right to come back in the community with us.
>
> He forfeited that right. Another indicator of what he's like -- because he has never done anything wrong in his life except as a grown man at 37, 30. Don't know the age. An adult has sex with a 15-year-old baby sitter.
>
> That's rape. That's sexual assault, and [appellant's trial counsel] summed it up perfectly when he said it's illegal to have sex with a child when he was questioning people. That one was a child and he raped her but he wants you to give him probation because he deserves it.
>
> . . . What does a rapist look like? I submit to you he sits right at the end of that table. You found him guilty. That's the face of a rapist.
>
> That's the face of a man of opportunity, 15-year-old girl; and [appellant's trial counsel] says we don't know how old she was. The witnesses say right here she was 15 when she had that baby, 15.

The State returned to this point in its closing argument:

> He knew exactly what the consequences of his actions were. He had already been through it twice before. He knew his dad had raped his sister. He knew the pain it caused his family.
>
> He knew the hardache [sic] it caused his sister. He was well aware of the circumstances of rape. He learned it a second time when he raped a 15-year-old girl, but you can minimize that by saying it's not his fault. He's just a man.
>
> That 15-year-old girl wanted it. He's the adult, and the law says as the adult you can't do this. He knows the problems it has caused in his family and her family. He knows; and he still chose to do it again, a man of opportunity.

Following these arguments, the jury assessed the statutory maximum jail sentence of 20 years, and, at $8,000, nearly the maximum fine. *See* Tex. Penal Code Ann.

31

§§ 12.33(a), (b) (Vernon 2011) (providing that punishment range for a second degree felony is not less than 2 years or more than 20 years and a fine not to exceed $10,000); 22.011(f) (classifying sexual assault as a second degree felony).

Considering the totality of the circumstances, there is a reasonable probability (or a probability sufficient to undermine confidence in the outcome) that, but for trial counsel's deficient performance, the sentencing jury would have reached a more favorable verdict. *See Ex parte Rogers*, 369 S.W.3d at 864; *Lopez*, 343 S.W.3d at 142. Accordingly, we conclude that appellant's appointed trial counsel was ineffective, and we remand the case for a new hearing on punishment. *See DeLeon*, 322 S.W.3d at 386; *Hagens v. State*, 979 S.W.2d 788, 792 (Tex. App.—Houston [14th Dist.] 1998, pet. ref'd) ("If the error occurred at the punishment phase of the trial, the conviction is retained, but the judgment is reversed and the cause remanded for a new punishment hearing.").

## CONCLUSION

Having overruled appellant's first, second, and third issues, we affirm appellant's conviction. However, because we conclude that appellant received ineffective assistance of counsel during the punishment phase, we reverse the trial court's judgment and remand the cause for a new punishment hearing.

/s/ William J. Boyce
Justice

Panel consists of Chief Justice Frost and Justices Boyce and Wise (Frost, C.J., dissenting).
Publish — Tex. R. App. P. 47.2(b).