

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 02-15-00363-CR

RANDY WAYNE TUCKER                                    APPELLANT

V.

THE STATE OF TEXAS                                          STATE

----------

### FROM THE 235TH DISTRICT COURT OF COOKE COUNTY
### TRIAL COURT NO. 13-00410

----------

## MEMORANDUM OPINION[1]

----------

Appellant Randy Wayne Tucker appeals his conviction for possession with intent to deliver between four and two hundred grams of methamphetamine.[2] In one issue, he argues that his trial counsel committed a "serious pattern of errors" that amount to ineffective assistance of counsel. He contends that the

---

[1] *See* Tex. R. App. P. 47.4.

[2] *See* Tex. Health & Safety Code Ann. § 481.112(a), (d) (West 2010).

performance of his trial counsel was "deficient at every level . . . , including both trial phases." Because the record, which is devoid of counsel's explanations for his challenged acts, does not show that counsel's representation was constitutionally deficient, we affirm.

**Background Facts**

In August 2013, appellant was the target of a "buy-bust" operation. Gainesville Police Department Officer Timothy Green led the operation with assistance from other officers. Officer Green initiated an investigation after receiving information from a confidential informant that appellant was distributing methamphetamine. Officer Green conducted a preliminary investigation to verify the informant's information and had the informant set up a meeting with appellant to buy methamphetamine.

The informant placed a telephone call to appellant in front of Officer Green, who could hear the discussion. In the call, the informant arranged to meet with appellant in the parking lot of a Wal-Mart store. The plan was for Officer Green and other officers to go with the informant. Once at the store, the informant would meet appellant and give a signal when the exchange had taken place. The officers would then move in and arrest appellant.

Prior to leaving, an officer searched the informant and her girlfriend for drugs and found none. Officer Green searched the informant's car for drugs and found none. The purpose of these searches was to make sure that the informant

did not bring any drugs and to therefore make the buy-bust scene a completely controlled environment.

Eventually, appellant arrived at the Wal-Mart on a motorcycle and approached the informant's vehicle. The informant got out of her vehicle and talked to appellant, but the informant and appellant made no exchange. The informant and appellant drove separately across the street to a Home Depot parking lot. Officer Green received a text message stating that appellant had become nervous about being in the Wal-Mart parking lot and wanted to move to the Home Depot parking lot.

The officers followed appellant to the Home Depot parking lot, waited for him to get off of his motorcycle, and then immediately moved in to place him under arrest. As appellant put his hands up, an officer saw him drop a black pouch. Once the officers restrained appellant, they retrieved the black pouch. The pouch contained 13.48 grams of methamphetamine.

A grand jury indicted appellant for possessing while intending to deliver the methamphetamine. At trial, after the jury had been selected, appellant's retained counsel successfully argued a motion to suppress the contents of appellant's cell phone. During the guilt/innocence phase of trial, appellant's counsel actively participated and made timely objections. After considering the parties' evidence and arguments, the jury found appellant guilty.

During the punishment phase, the jury heard testimony from appellant and evidence of his criminal history and assessed twenty-five years' confinement.

The trial court sentenced him accordingly.  At the conclusion of the trial, the trial court granted appellant's request to appoint his trial counsel as counsel for an appeal.

After the time for filing a notice of appeal passed, the trial court received a hand-written letter from appellant stating that counsel was suffering from serious medical problems and had not filed a notice of appeal.  Later, appellant submitted to the trial court a handwritten notice of appeal.  The trial court appointed new appellate counsel for appellant, who filed an appeal with this court.  We dismissed the untimely appeal for want of jurisdiction.[3]  The court of criminal appeals granted appellant an out-of-time appeal.

**Alleged Ineffective Assistance of Counsel**

In one issue, appellant argues that his trial counsel was constitutionally ineffective for thirteen reasons:  (1) counsel failed to file a pretrial motion for notice of the State's intent to admit evidence of prior bad acts; (2) counsel failed to properly subpoena evidence; (3) counsel failed to object to the State's misstatement of law during voir dire; (4) counsel failed to conduct a rigorous voir-dire examination and used only two peremptory strikes; (5) unprompted, counsel stipulated to one of the State's witnesses as an expert; (6) counsel failed to object to a State's witness's testimony about the drug trade; (7) counsel called

---

[3]*See Tucker v. State*, No. 02-15-00054-CR, 2015 WL 1743392, at *1 (Tex. App.—Fort Worth Apr. 16, 2015, no pet.) (mem. op., not designated for publication).

4

appellant to testify despite appellant's reluctance; (8) counsel opened the door to prior bad acts by asking appellant about his drug use during direct examination; (9) counsel failed to object when the State cross-examined appellant regarding drug use; (10) counsel failed to call witnesses or offer evidence during the punishment phase; (11) counsel failed to object to the State's cross-examination of appellant with questions about prior bad acts and criminal history without documented proof; (12) counsel failed to file a timely notice of appeal; and (13) counsel displayed odd and overall unprofessional behavior. Appellant argues that all of these deficiencies show that counsel's performance fell below a professional standard and was ineffective when viewed under the totality of the circumstances.

The Sixth Amendment affords criminal defendants the right to reasonably effective assistance of counsel. U.S. Const. amend. VI; *Hines v. State*, 144 S.W.3d 90, 92 (Tex. App.—Fort Worth 2004, no pet.). To establish ineffective assistance of counsel, appellant must show by a preponderance of the evidence that his counsel's representation was deficient and that the deficiency prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984);[4] *Nava v. State*, 415 S.W.3d 289, 307 (Tex. Crim. App. 2013); *Hernandez*

---

[4]We will analyze some of the alleged deficiencies identified above under the deficient-performance prong of *Strickland* while analyzing others under the prejudice prong. *See Strickland*, 466 U.S. at 697, 104 S. Ct. at 2069 ("[T]here is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the

5

*v. State*, 988 S.W.2d 770, 770 (Tex. Crim. App. 1999). An ineffective-assistance claim must be "firmly founded in the record," and "the record must affirmatively demonstrate" the meritorious nature of the claim. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999).

Direct appeal is usually an inadequate vehicle for raising an ineffective-assistance-of-counsel claim because the record is generally undeveloped. *Menefield v. State*, 363 S.W.3d 591, 592–93 (Tex. Crim. App. 2012); *Thompson*, 9 S.W.3d at 813–14. In evaluating the effectiveness of counsel under the deficient-performance prong, we look to the totality of the representation and the circumstances of each case. *Thompson*, 9 S.W.3d at 813. The issue is whether counsel's assistance was reasonable under all the circumstances and prevailing professional norms at the time of the alleged error. *See Strickland*, 466 U.S. at 688–89, 104 S. Ct. at 2065; *Nava*, 415 S.W.3d at 307. Review of counsel's representation is highly deferential, and we indulge a strong presumption that counsel's conduct was not deficient. *Nava*, 415 S.W.3d at 307–08.

It is not appropriate for an appellate court to simply infer ineffective assistance based upon unclear portions of the record or when counsel's reasons for doing something or failing to do something do not appear in the record. *Menefield*, 363 S.W.3d at 593; *Mata v. State*, 226 S.W.3d 425, 432 (Tex. Crim. App. 2007). Counsel "should ordinarily be afforded an opportunity to explain his

defendant makes an insufficient showing on one."); *Applin v. State*, 341 S.W.3d 528, 535 (Tex. App.—Fort Worth 2011, no pet.) (following *Strickland*).

actions before being denounced as ineffective." *Menefield*, 363 S.W.3d at 593. If counsel is not given that opportunity, we should not conclude that counsel's performance was deficient unless the challenged conduct was "so outrageous that no competent attorney would have engaged in it." *Nava*, 415 S.W.3d at 308.

**Alleged deficient performance under *Strickland***

Appellant did not file a motion for new trial raising the issue of ineffective assistance of counsel based on the claims made here; therefore, we have no record detailing counsel's reasoning behind his actions or inactions. Without a record reflecting counsel's strategy and reasons for particular acts or omissions, it is not our task to speculate as to all the potential strategies that counsel could have employed at trial. *See Bone v. State*, 77 S.W.3d 828, 835 (Tex. Crim. App. 2002); *Jackson v. State*, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994). Thus, we will review appellant's claims of ineffective assistance for deficient performance on counsel's rationale that may be reflected in the record or for behavior that was so outrageous that no competent attorney would have engaged in it. *See Nava*, 415 S.W.3d at 308; *Aldrich v. State*, 296 S.W.3d 225, 233 (Tex. App.—Fort Worth 2009, pet. ref'd) (op. on reh'g) (reviewing each claim of ineffective assistance, the reasons cited, and evidence reflected in the record).

**Failure to file pretrial motions**

Appellant's first claim of counsel's deficient performance is counsel's failure to file a pretrial motion for notice of the State's intent to present evidence of appellant's prior bad acts at both the guilt/innocence phase and the

7

punishment phase. During the guilt/innocence phase, counsel asked appellant directly about his drug use, and the State also questioned appellant on that topic. During the punishment phase, the State questioned him about his history of arrests, convictions, and drug use dating back to the 1980s.

The failure to file a pretrial motion for notice of extraneous offenses of which the State plans to present evidence generally does not result in ineffective assistance of counsel. *Autry v. State*, 27 S.W.3d 177, 182 (Tex. App.—San Antonio 2000, pet. ref'd); *Miranda v. State*, 993 S.W.2d 323, 327 (Tex. App.—Austin 1999, no pet.). The record must show that counsel's decision to not file a pretrial motion for notice was not part of trial strategy. *See Autry*, 27 S.W.3d at 182; *see also Parker v. State*, No. 02-05-00265-CR, 2006 WL 2382901, at *8 (Tex. App.—Fort Worth Aug. 17, 2006, no pet.) (mem. op., not designated for publication) (stating that because the failure to file a pretrial motion for notice of extraneous offenses was not categorically ineffective assistance and there was no record as to trial counsel's strategy, the issue was better raised through a writ of habeas corpus).

Nothing in the record shows counsel's reasoning for the decision to not file a pretrial request for notice of extraneous offenses. Thus, we cannot find this to be deficient performance. *See Parker*, 2006 WL 2382901, at *8.

**Failure to subpoena evidence**

Next, appellant contends that counsel was ineffective for failing to investigate and subpoena evidence. At the end of the defense's case-in-chief,

8

counsel asked the court to recess for the day because he was "waiting on an [e-mail] with some photographs." These photos were supposed to come from the company that operated the security cameras at Home Depot. After a discussion away from the jury, the court recessed until the next day to allow counsel to get the photos and to offer them into evidence. The next day, counsel told the court that he would not be presenting the photos because the company, based in Georgia, insisted on a subpoena.

A claim of ineffective assistance based on counsel's failure to submit particular evidence cannot succeed without a showing that the evidence was available and would have benefited the defense. *See Ex parte Ramirez*, 280 S.W.3d 848, 853 (Tex. Crim. App. 2007); *King v. State*, 649 S.W.2d 42, 44 (Tex. Crim. App. 1983); *see also Carson v. State*, No. 02-15-00064-CR, 2016 WL 438095, at *3–4 (Tex. App.—Fort Worth, Feb. 4 2016, no pet.) (mem. op., not designated for publication) (holding that counsel was not ineffective for failing to subpoena a witness because no ineffective assistance claim was made in the trial court to create a record of why counsel waited to subpoena the witness, whether the witness was available, or whether the testimony would have benefited the defense).

There is no record here of why counsel delayed in obtaining the photos, whether the photos were available, or what benefit the photos would have had. Without that information in the record, appellant has failed to establish that counsel's failure to subpoena these photographs was deficient performance.

9

**Conduct during voir dire**

Appellant contends that counsel was deficient during voir dire because he did not question the jury panel in depth and only used two of his peremptory strikes. During voir dire, counsel stated the names of the major witnesses and actors in the case and asked veniremembers about any affiliation they may have had with them. Counsel asked about the veniremembers' biases towards police officers. He asked about what the veniremembers' concepts of possession were. He also related a personal story about his biases and asked if any members had similar experiences so that he could strike them. Counsel concluded his voir dire by saying, "[S]pecial prosecutor talked about everything. Thank y'all very much." When the court heard challenges for cause, counsel actively participated. When the court asked counsel about his single challenge for cause, counsel replied, "Well, the rest of them got struck by the State." After the trial court resolved the challenges for cause, counsel used only two peremptory strikes.

Counsel's limited questions during voir dire and his exercise of only two peremptory strikes cannot be held deficient without an inquiry into the reasons for these actions. *See Goodspeed v. State*, 187 S.W.3d 390, 392–94 (Tex. Crim. App. 2005) (holding that on an undeveloped record, counsel's failure to ask any questions in voir dire did not qualify as ineffective assistance, nor did counsel's decision to use two peremptory strikes on jurors "who had already been excused"). On the record before us, counsel actively participated in the entire voir-dire process. He asked the veniremembers questions, made statements to

10

elicit biases from them, and made a challenge for cause. Counsel made it clear that the State had covered questions and challenges he was concerned with. On this undeveloped record, we cannot conclude that counsel's actions during voir dire constitute deficient performance. *See id.*; *Cooper v. State*, No. 02-14-00202-CR, 2015 WL 1407850, at *4 (Tex. App.—Fort Worth, Mar. 26, 2015) (mem. op., not designated for publication) (holding that counsel's "unexplained decision to not retread the ground already covered by the trial court and the State" was not deficient performance); *Alaniz v. State*, No. 14-11-00377-CR, 2012 WL 3776361, at *3 (Tex. App.—Houston [14th Dist.] Aug. 30, 2012, no pet.) (mem. op., not designated for publication) (holding that on a record that was silent concerning counsel's strategy, counsel's decision to use fewer than all of the available peremptory strikes was not deficient performance).

**Stipulation to expertise of witness**

Appellant's next claim for ineffective assistance is counsel's unprompted stipulation to the expert qualifications of David Scott, the chief deputy of the Cooke County Sheriff's Office. At the beginning of Chief Deputy Scott's testimony, he spoke of his years of experience and training with various police agencies. After Chief Deputy Scott finished describing his credentials and experience, the State asked the court to recognize him as an expert witness in narcotics and narcotics investigation. Appellant's counsel stated, "We'll stipulate to that, Your Honor." Appellant now contends that this stipulation was deficient performance.

11

Stipulating to the admissibility of evidence offered by the State is not devoid of trial strategy and cannot generally qualify as deficient performance with a record that is silent as to counsel's rationale. *See Roberts v. State*, No. 10-14-00048-CR, 2015 WL 128563, at *5 (Tex. App.—Waco, Jan. 8, 2015, pet. ref'd) (mem. op., not designated for publication) (holding that counsel's stipulation to the admissibility of lab reports verifying a substance as methamphetamine when the State's expert was unavailable to testify was not ineffective assistance without a record of counsel's reasons for doing so); *Rodriguez v. State*, 459 S.W.3d 184, 195 (Tex. App.—Amarillo 2015, pet. ref'd) ("[W]e note that . . . the record is silent as to what strategy trial counsel was pursuing when the stipulation was agreed upon. This silence is fatal to appellant's claim."); *Torres v. State*, No. 05-11-01310-CR, 2013 WL 3487396, at *4 (Tex. App.—Dallas July 10, 2013, no pet.) (mem. op., not designated for publication) ("The record is silent as to why appellant's trial counsel . . . stipulated Detective Hale was an expert in matters pertaining to child abuse . . . . Therefore, appellant has failed to rebut the presumption that counsel's decision[] [was] reasonable."). Appellant has not directed us to any part of the record showing that counsel's stipulation was not part of a sound strategy. We cannot say on this record that the stipulation was deficient performance.

**Failure to object to certain testimony**

Appellant contends that counsel's failure to object to the State's evidence on two occasions during the guilt/innocence phase of trial was deficient

performance. First, appellant contends that counsel was deficient for failing to object to Chief Deputy Scott's testimony about (1) methamphetamine being manufactured in labs locally and in countries such as Mexico; (2) the addictive properties of methamphetamine and its effects on the abuser, his or her family, and the community, including the cost of treatment; (3) the impact of methamphetamine in contributing to other crimes; (4) how methamphetamine is consumed; and (5) the involvement of Mexican drug cartels in the import and delivery of methamphetamine along the I-35 corridor. Appellant argues that there was no evidence that the methamphetamine in this case was from Mexico and that the testimony was prejudicial.

Appellant also contends that counsel was deficient for failing to object when the State asked appellant questions about his drug use. During the State's cross-examination of appellant, it asked him several questions about his drug use and drug purchasing habits.

Failure to object, without a record detailing the potential strategy behind doing so, generally does not rise to the level of ineffective assistance of counsel. *Thompson*, 9 S.W.3d at 814; *see also Osorio v. State*, 994 S.W.2d 249, 252–53 (Tex. App.—Houston [14th Dist.] 1999, pet ref'd) (finding that counsel's failure to object to testimony about the values, packaging, and transportation of Colombian cocaine could not be found ineffective assistance when the record was silent on counsel's strategy); *Burdick v. State*, No. 02-11-00171-CR, 2012 WL 4010415, at *5 (Tex. App.—Fort Worth Sept. 13, 2012, no pet.) (mem. op., not designated for

13

publication) ("Because the record here is silent as to Counsel's reason for failing to object, we are constrained to hold that Appellant has failed to rebut the presumption that Counsel acted reasonably."); *Lopez v. State*, 80 S.W.3d 624, 629–30 (Tex. App.—Fort Worth 2002) (concluding that failing to object to the admission of extraneous offense evidence could not be found to be ineffective assistance without a record of counsel's strategy), *aff'd*, 108 S.W.3d 293 (Tex. Crim. App. 2003).

The record is silent on why counsel did not object to Chief Deputy Scott's testimony or to the State's questions to appellant about his drug use. Appellant has not pointed to anything in the record that reflects that counsel did not have a reason for doing so. On this record, appellant fails to establish that counsel's failure to object rises to the level of deficient performance.

**Calling appellant to testify**

Appellant claims that counsel was deficient for calling him to testify when he was reluctant to do so. Appellant based his defense on the theory that the methamphetamine found during the buy-bust did not belong to him. To further this theory, the defense called appellant to the stand to testify that the drugs were not his. Before appellant testified, the court had the following exchange with him and counsel outside the presence of the jury:

> THE COURT: . . . I just wanted to make sure, [counsel], before you put [appellant] on the stand that you've admonished him of his right not to testify?

14

[DEFENSE COUNSEL]: Yes, ma'am. I have told him he didn't have to testify and if he did, he's subject to cross-examination just like any other witness.

THE COURT: Okay. . . . I just want to be clear that that's on the record.

Raise your right hand.

([Appellant] sworn.)

THE COURT: Okay. Now, [appellant], you understand that you have the absolute right not to testify in this case?

THE DEFENDANT: Yes.

THE COURT: Have you had an adequate amount of time to consult with your attorney about the advisability of your testifying?

THE DEFENDANT: I would like to have some more time.

THE COURT: No -- well, you need to make your decision now, and you -- you and your attorney have talked about whether or not you're going to testify, correct?

THE DEFENDANT: We've discussed it some.

THE COURT: Okay. [Your] attorney has indicated that --

THE DEFENDANT: If he calls me, I'll go.

THE COURT: Excuse me?

THE DEFENDANT: If he calls -- if he calls me, that's what I'm saying, I'm ready.

THE COURT: Okay, you understand that's your right, to testify or not testify?

THE DEFENDANT: Yes, ma'am.

THE COURT: And you understand that if you were to choose not to testify, that I would instruct this jury that they could not consider your failure to testify as any circumstance against you. Do you understand that?

15

THE DEFENDANT: Yes, ma'am. I understand.

THE COURT: But if your attorney calls you, it's still your wish to testify?

THE DEFENDANT: If he says go, I'll go.

On direct examination, appellant testified that the drugs found at the scene did not belong to him.

Without a record disclosing counsel's rationale, we are required to give deference to counsel's decisions. *Aldrich*, 296 S.W.3d at 255. In *Aldrich*, we were faced with a similar situation where an appellant made an ineffective assistance claim based on his counsel calling him to testify. *Id.* at 254–55. We explained that Aldrich had been admonished by the court and understood the consequences of his choice to testify. *Id.* at 255. Thus, we could not hold that counsel's decision to call Aldrich to testify was without a plausible basis. *Id.*

Similar to *Aldrich*, here, there is no record reflecting counsel's strategy for calling appellant to testify. *Id.* The record reflects that counsel and the court admonished appellant about his right to not testify and that he would be subject to cross-examination. We cannot deduce that the comment "I would like to have some more time" shows that appellant was not adequately prepared to testify.

Without a record showing counsel's strategy behind the decision to have appellant testify, we cannot find that counsel's decision constitutes deficient performance. *See id.*; *see also Rahe v. State*, Nos. 14-11-00707-CR, 14-11-00708-CR, 2013 WL 440557, at *3 (Tex. App.—Houston [14th Dist.] Feb. 5,

2013, no pet.) (mem. op., not designated for publication) ("Here, the record is silent as to why appellant testified . . . . Accordingly, appellant has failed to rebut the strong presumption that his trial counsel rendered adequate assistance."); *Lubiano v. State*, No. 05-92-01189-CR, 1995 WL 547134, at *3 (Tex. App.— Dallas Sept. 8, 1995, no pet.) (not designated for publication) ("[C]ounsel was not ineffective for calling appellant to testify in his own behalf. The decision whether or not to testify in his own behalf belongs to the client.").

**Opening door to prejudicial testimony**

Appellant claims that counsel exhibited deficient performance by asking him questions that opened the door to his prior drug use. Once counsel had appellant on direct-examination, he asked appellant questions that assisted in telling appellant's version of events. Appellant testified that he had come to the Wal-Mart parking lot because the informant asked him to bring her money for cigarettes and gas, which he had done before. Appellant consistently testified that the drugs did not belong to him. Toward the end of counsel's direct examination, they had the following exchange:

> [COUNSEL:] Now, you were given probation many years ago for possession of less than one gram of methamphetamine; is that true?
>
> [APPELLANT:] No. It was over one and under 4, is what they said.
>
> [COUNSEL:] And did -- where were you arrested for that?
>
> [APPELLANT:] There at Gordonville.

17

[COUNSEL:] And were you prosecuted there in adjacent to Grayson County?

[APPELLANT:] It is Grayson County.

[COUNSEL:] And did you receive a probation?

[APPELLANT:] I did.

[COUNSEL:] And did they send you to a SAFPF facility for violating probation?

[APPELLANT:] Yes, they did.

. . . .

[COUNSEL:] Okay. And do you still use methamphetamine?

[APPELLANT:] From time to time.

. . . .

[COUNSEL:] But you weren't delivering 13 1/2 grams to these ladies?

[APPELLANT:] No. I wouldn't have 13 1/2 grams. I didn't have money for 13 1/2 grams.

There is no evidence in the record as to what strategy counsel was attempting to employ. Appellant argues that this exchange was completely unnecessary and could not have been part of any conceivable trial strategy. The State rebuts that counsel could have potentially offered the evidence of appellant's drug use in an effort to have appellant appear forthcoming with potentially prejudicial evidence in order to build credibility with the jury.

We are not required to speculate as to counsel's potential strategies, but offering prejudicial evidence through a defendant's testimony is not devoid of any

18

strategy. *See Bone*, 77 S.W.3d at 835–36 (reversing court of appeals and finding that trial counsel was not ineffective in eliciting prejudicial testimony because there was no firm support in the record for the finding, and the allegedly prejudicial evidence could have been used to show "sincerity and contrition"); *Aldrich*, 296 S.W.3d at 254–55 (finding that under the deferential standard of review that is required, adducing prejudicial testimony from a defendant on direct examination is not without plausible basis); *Martin v. State*, 265 S.W.3d 435, 445 (Tex. App.—Houston [1st Dist.] 2007, no pet.) (concluding that counsel's decision to elicit prejudicial testimony did not comprise ineffective assistance because it could have been "a strategic attempt to appear open and honest").

There is nothing in the record about counsel's strategy for the eliciting potentially prejudicial testimony. Thus, we cannot say that this was deficient performance.

**Failure to call witnesses or present evidence during punishment**

Appellant claims that trial counsel's performance was deficient for failing to call any witnesses or offer any evidence on appellant's behalf during the punishment phase. But during the punishment phase, counsel called appellant to testify. Appellant testified about the reasons that he believed he should be given a lighter sentence. He told the jury about how he cares for his son, who was injured in a motorcycle accident. He talked about how his father, who is old and infirm, may die while he is incarcerated. He talked about his mother, who is

19

being treated for Alzheimer's. Finally, appellant made a plea to the jury to assess the minimum punishment.

Counsel's failure to call other witnesses or offer evidence is irrelevant absent a showing that such witnesses were available and that appellant would have benefited from their testimony. *See King*, 649 S.W.2d at 44; *see also Pollock v. State*, Nos. 02-02-00389-CR, 02-02-00390-CR, 2004 WL 966316, at *3 (Tex. App.—Fort Worth, May 6, 2004, pets. ref'd) (mem. op., not designated for publication) (holding that counsel's failure to call witnesses at punishment phase could not be found ineffective without a record indicating that witnesses were available and would have benefited the defendant).

Appellant has not shown that there were any other witnesses that should have been called or that there was additional evidence that would have benefited him. Counsel did offer appellant's testimony about his circumstances to influence the jury. Any other evidence that counsel could have put in front of the jury, but did not, may have been part of trial strategy. Appellant has failed to prove that this was deficient performance.

**Failure to object to evidence during punishment phase**

Appellant contends that counsel was deficient for failing to object during appellant's punishment-phase testimony regarding his prior bad acts, arrests, and convictions. During the punishment phase, the State asked appellant about multiple prior arrests and convictions dating back to the 1980s. Appellant argues

20

that counsel was deficient for not objecting to this questioning as prejudicial or objecting to the lack of documentation to prove the prior bad acts.

For purposes of assessing punishment, the State may offer evidence of any extraneous crime or bad act that is shown beyond a reasonable doubt to have been committed by the defendant or for which he can be held criminally responsible. *Haley v. State*, 173 S.W.3d 510, 514 (Tex. Crim. App. 2005) (citing Tex. Code Crim. Proc. Ann. art. 37.07, § 3(a) (West Supp. 2016)); *see also Walker v. State*, 195 S.W.3d 250, 262 (Tex. App.—San Antonio 2006, no pet.) (explaining that "unadjudicated arrests may be admissible in the punishment phase of a criminal trial"); *Giddens v. State*, No. 06-00-00157-CR, 2001 WL 803767, at *2 (Tex. App.—Texarkana July 17, 2001, no pet.) (not designated for publication) ("[A] prior arrest for an offense for which the defendant was not convicted or otherwise found culpable is an extraneous transaction admissible under Article 37.07, § 3(a)."). An attorney's failure to object to admissible evidence does not constitute deficient performance, so for appellant to "succeed on this ineffectiveness claim, he must demonstrate that if counsel had objected, the trial court would have erred in overruling the objection." *Oliva v. State*, 942 S.W.2d 727, 732 (Tex. App.—Houston [14th Dist.] 1997), *pet. dism'd*, 991 S.W.2d 803 (Tex. Crim. App. 1998); *see also Ex parte Jimenez*, 364 S.W.3d 866, 887 (Tex. Crim. App. 2012) ("The failure to object to proper questions and admissible testimony . . . is not ineffective assistance."), *cert. denied*, 133 S. Ct. 834 (2013); *Carell v. State*, No. 11-13-00220-CR, 2015 WL 4722237, at *4 (Tex.

21

App.—Eastland July 30, 2015, pet. ref'd) (mem. op., not designated for publication) ("In order to prevail on this contention, Appellant must establish that the evidence was inadmissible because defense counsel's failure to object to admissible evidence does not constitute ineffective assistance of counsel.").

On the record here, the State chose to offer evidence of prior bad acts through cross-examination of appellant. Appellant does not show in his brief how the evidence was inadmissible or even claim that it was. Thus, appellant fails to show deficient performance on this ground.

**Allegedly unprofessional behavior**

Appellant contends that counsel displayed odd and unprofessional behavior throughout the proceedings. Appellant cites to only one specific instance, where counsel asked the court to be allowed to "go to the men's room" in the presence of veniremembers before beginning his voir dire. Counsel made similar requests at other times, some of which were in the presence of the jury.

In *Aldrich*, the appellant made similar claims regarding an attorney's physical infirmities and mental deficiencies. 296 S.W.3d at 249–50. There, counsel was seventy-two years old, hard of hearing, and had recurring memory issues. *Id.* He often became confused and had to be reoriented by the court. *Id.* He also constantly asked witnesses, the court, and the State to repeat themselves. *Id.* The record in *Aldrich* also reflected that counsel still participated in the adversarial process. *Id.* We held that counsel's infirmities were unusual

22

but that because they did not breakdown the adversarial process, they did not, by themselves, constitute deficient performance. *Id.*

Here, counsel's actions are odd but not nearly as disruptive as the behavior displayed in *Aldrich*. *See id.* Appellant does not direct us to evidence in the record establishing that counsel's asking to use the restroom disrupted the adversarial process. Because counsel's actions did not affect the proceeding to the point that there was a breakdown of the adversarial process, we cannot say that they constituted deficient performance. *See id.*

**Alleged prejudice under *Strickland***

The prejudice prong of *Strickland* requires a showing that counsel's errors were so serious that they deprived the defendant of a fair and reliable trial. *Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064. In other words, appellant must show there is a reasonable probability that, without the deficient performance, the result of the proceeding would have been different. *Id.* at 694, 104 S. Ct. at 2068; *Nava*, 415 S.W.3d at 308. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068; *Nava*, 415 S.W.3d at 308. The ultimate focus of our inquiry must be on the fundamental fairness of the proceeding in which the result is being challenged. *Strickland*, 466 U.S. at 697, 104 S. Ct. at 2070.

**Failure to object to misstatement of law during voir dire**

Appellant contends that counsel rendered ineffective assistance because he failed to object to the State's misstatement of the law during voir dire. During voir dire, the following exchange occurred:

> [VENIREPERSON]: Are you saying that if you're caught with a certain amount of drugs that you're considered intent to distribute?
>
> [THE STATE]: Yes.
>
> [VENIREPERSON]: Not debatable, right?
>
> [THE STATE]: I'm sorry?
>
> [VENIREPERSON]: In the law, it's not debatable. If you're caught with that much, the law says that you are trying to distribute it. It's not debatable.
>
> [THE STATE]: *No, not necessarily.*
>
> [VENIREPERSON]: Or whatever it is.
>
> [THE STATE]: Okay. Basically, the evidence that will be presented, and I'm not going to go into the facts of the case. But as a juror, it is your job to sit up there if you are on the jury to determine whether or not you believe beyond a reasonable doubt that it was intent to deliver, all right?
>
> . . . .
>
> [VENIREPERSON]: I'm not arguing, I'm just trying to --
>
> [THE STATE]: No, no I understand. Let me explain. You can *look at different factors, such as the weight*, *such as his -- the person's actions, if they do have scales or baggies or whatever, and you can determine whether [there] was intent to deliver. It's not always based on weight*, but sometimes it's based on the actions of the defendant or the actions of the person . . . selling the drugs. And you can look a little at those and determine if --
>
> . . . .

24

[VENIREPERSON]: If you're caught with so much, you're automatically assumed to be --

[THE STATE]: Yes. I mean, *it's not automatic.* But if you're caught with a lot, it is the assumption that you're intending to deliver that or sell that.

. . . .

THE COURT: Let me explain that. This crime, like all crimes, can be broken down into elements. And the State has to prove each and every element to the jury beyond a reasonable doubt. One of the elements in this case they must prove, according to the indictment, is possession with intent to deliver, so those of you who are selected as jurors, *you'll have to decide in your mind after you've heard all of the facts:* Did the State prove that to you beyond a reasonable doubt? [Emphases added.]

The State incorrectly stated—by answering the veniremember in the affirmative—that if a defendant is caught with a large amount of drugs then the law assumes intent to deliver. *See Branch v. State*, 599 S.W.2d 324, 325 (Tex. Crim. App. [Panel Op.] 1979) ("There is no statutory presumption regarding the evidence to prove possession with intent to deliver."); *see also Jones v. State*, 195 S.W.3d 279, 288 (Tex. App.—Fort Worth 2006) (op. on reh'g) (discussing factors by which courts review the evidence of a defendant's intent to deliver drugs), *aff'd*, 235 S.W.3d 783 (Tex. Crim. App. 2007). The State then backtracked and explained to the veniremembers that it was their job to determine, based on several factors, whether there was intent to deliver beyond

25

a reasonable doubt.[5] The court intervened at the end of the exchange and stated that the veniremembers would be required to determine whether appellant had intent to deliver based on "all of the facts."[6]

We must look to the record for a reasonable probability that the State's misstatement of law deprived appellant of a trial with a reliable result. *See Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064. We look to the record before us for any showing that the jury relied on the State's misstatement to the defendant's detriment. *See Cox v. State*, 389 S.W.3d 817, 820 (Tex. Crim. App. 2012) (concluding that the assumption that a jury had relied on appellant's counsel's misstatement of law concerning whether sentences would run concurrently or consecutively was not reasonable or probable). We also look at the record to see if the misstatement of law was corrected elsewhere by the parties or by the court. *See Brown v. State*, 482 S.W.3d 157, 165 (Tex. App.—Texarkana 2015, no pet.).

Here, the State (to a limited extent) and the trial court corrected the State's initial statement that the law conclusively presumed a defendant's intent to deliver based upon the quantity of drugs the defendant possessed. Perhaps more importantly, under the state of the evidence in this case, it is not reasonable

---

[5]Even before the exchange quoted above, the State intimated to the veniremembers that intent to deliver could be determined by the way drugs are packaged or by the presence of scales, baggies, cash, or weapons.

[6]Appellant recognizes in his brief that the trial court intended for its statement to "clarify and correct the prosecutor's misstatement of the law."

or probable to conclude that the jury likely found that appellant intended to deliver the methamphetamine based on its weight alone. *See Cox*, 389 S.W.3d at 820. Instead, the jury heard evidence that a reliable confidential informant told the police that appellant was "involved in the distribution of methamphetamine," that the informant placed a telephone call in an officer's presence to set up appellant's delivery of methamphetamine at a Wal-Mart store, that appellant met the informant at that store, that he appeared to be "unsure" and "suspicious" after arriving at the store, and that the police later saw appellant drop the pouch containing the methamphetamine at the nearby Home Depot store. Given this direct evidence that appellant agreed to meet the informant for the purpose of delivering methamphetamine and that he had methamphetamine upon meeting the informant, we conclude that it is not likely that the jury based its finding of guilt upon the State's misstatement of law during voir dire. Thus, we cannot find that there is a reasonable probability of prejudice that undermines confidence in the outcome of this case. *See Strickland*, 466 U.S. at 697, 104 S. Ct. at 2070.

**Cumulative deficiencies**

Appellant argues that even if none of the acts listed above meet the standard of deficient performance under *Strickland*, the totality of the circumstances surrounding counsel's "conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Aldrich*, 296 S.W.3d at 257 (quoting *Strickland*, 466 U.S.

27

at 686, 104 S. Ct. at 2064).  Appellant cites to cases from this court and our sister courts where counsel was found ineffective.

Appellant first cites *Aldrich*, where we found that counsel was ineffective throughout the proceeding and committed enough errors to undermine the proceeding's outcome.  *See id.*  In *Aldrich*, we reviewed the entire record and each of appellant's distinct complaints, and we determined which complaints constituted deficient performance and which did not.  *See id.* at 233.  We found by a preponderance of the evidence that counsel had so prejudiced Aldrich's defense that Aldrich had received ineffective assistance of counsel.  *Id.* at 258.

This determination was based on distinct examples drawn from the record where counsel's performance was clearly deficient, including the failure to adequately convey a plea offer, failure to investigate, and failure to timely obtain and disclose defense experts.  *Id.* at 233.  The root cause of all of these failures was clearly reflected in the trial record to be counsel's legally incorrect interpretation of a United States Supreme Court decision.  *Id.*  On the record, the court admonished counsel for conducting his entire pretrial investigation—or lack thereof—based on this mistaken interpretation.  *Id.* at 235.  The record also reflected that on several occasions, the State and the court had to step in and assist counsel because they perceived that counsel's behavior would be found to be "per se" ineffective assistance.  *Id.* at 258.

We held in *Aldrich* that defense counsel's pretrial conduct in misunderstanding the law, failing to adequately convey the plea offer, failing to

28

conduct a reasonable investigation, and failing to timely obtain and disclose defense experts, along with counsel's trial conduct in presenting defensive theories not supported by the evidence, continuing to misunderstand the law, failing to properly question witnesses, and making inaccurate factual statements constituted deficient performance during the trial on guilt/innocence. *Id.* at 256. The record in *Aldrich* clearly reflects that throughout the trial process, the State and the trial court pled with counsel to conduct his representation in a more professional and competent manner so that any conviction would not be overturned on appeal because of ineffective assistance. *Id.* at 257. Each deficiency found in *Aldrich* was analyzed by this court and individually determined to be well founded in the record. *Id.* at 256.

Here, we cannot say that counsel's actions and conduct were on the same level as the deficient performance in *Aldrich*. *See id.* After reviewing the record in this case, appellant's claims are more analogous to the claims in *Aldrich* that we concluded did not constitute deficient performance. *See id.* (finding that physical and mental infirmities, alienation of the State and trial court, and adducing damaging testimony from Aldrich did not constitute deficient performance). The claims that appellant raises do not meet the same level of cumulative deficient performance nor are they as clearly reflected by the record as the claims that we found to be deficient in *Aldrich*. *Id.*

Like *Aldrich*, the rest of appellant's cited cases are distinguishable because they turned on distinct errors that were reflected in the record. *See Fuller v.*

*State*, 224 S.W.3d 823, 835 (Tex. App.—Texarkana 2007, no pet.) (holding that counsel provided ineffective assistance because the only issue in the case was the credibility of one witness and counsel did not object to inadmissible bolstering evidence about that witness, and the record was clear that counsel's tactic on cross-examination of questioning the proper foundation only resulted in more bolstering); *Walker*, 195 S.W.3d at 264 (holding that counsel's representation constituted ineffective assistance based on the totality of the circumstances after a motion for new trial hearing established a record of the reasons for counsel's acts and omissions, and refusing to address issues that had not been raised at that hearing); *Hall v. State*, 161 S.W.3d 142, 153–54 (Tex. App.—Texarkana 2005, pet. ref'd) (concluding that counsel's failure to object to the State's references about unadjudicated criminal offenses was ineffective because the acts referenced were not relevant to the present charge or admissible under the rules of evidence); *Stone v. State*, 17 S.W.3d 348, 353–54 (Tex. App.—Corpus Christi 2000, pet ref'd) (holding that the record reflected that opening the door to a murder conviction that was otherwise inadmissible—and State had already said that it would not seek to admit it—prejudiced the defendant's credibility and alibi defense enough to be ineffective assistance).

Each of these cases is distinguishable because they contained at least one distinct instance of deficient conduct that was clearly reflected in the record. Under the totality of the circumstances in this case, for the reasons discussed above, we cannot conclude that counsel provided ineffective assistance.

**Failure to timely file a notice of appeal**

Finally, appellant complains that counsel provided ineffective assistance because he failed to timely file a notice of appeal, which resulted "in the loss of [appellant's] right to direct appeal." Appellant raised this claim through an application for writ of habeas corpus to the court of criminal appeals. The court of criminal appeals granted appellant an out-of-time appeal. Thus, we cannot conclude that appellant suffered harm under *Strickland* based on counsel's failure to timely file a notice of appeal.

## Conclusion

Appellant has not shown on this record any errors that rose to the level of constitutionally deficient performance, constituted behavior so outrageous that no competent attorney would have engaged in it, or prejudiced the proceeding such that the trial cannot be relied upon as having produced a just result. *See Strickland*, 466 U.S. at 686, 104 S. Ct. at 2064; *Nava*, 415 S.W.3d at 308. We therefore overrule appellant's sole issue and affirm the trial court's judgment.

/s/ Terrie Livingston

TERRIE LIVINGSTON
CHIEF JUSTICE

PANEL: LIVINGSTON, C.J.; MEIER and GABRIEL, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: December 22, 2016